(No. 60178—

GEORGE W. DUNNE, County Board President, *et al.*, Appellees, v. THE COUNTY OF COOK *et al.*, Appellants.

*Opinion filed July 26, 1985.—Rehearing denied September 27, 1985.*

162

Jerome H. Torshen, of Chicago, and James T. Ryan, of Arlington Heights, Special State's Attorneys (Abigail Spreyer, of Jerome H. Torshen, Ltd., and Timothy R. Conway, of Greenberger, Krauss & Jacobs, Chtd., all of Chicago, of counsel), for appellants.

Jerold S. Solovy, Special State's Attorney, of Chicago (Barry Sullivan and Joel T. Pelz, of Jenner & Block, of Chicago, of counsel), for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, George W. Dunne, president of the board of commissioners of Cook County, filed this action in the circuit court of Cook County against the other 16 members of the board, seeking a declaratory judgment that the ordinance approved on January 17, 1983, reducing from four-fifths to three-fifths the majority necessary to

override a veto, was invalid. Mathew W. Bieszcat and John H. Stroger, Jr., members of the board who had not voted for the ordinance, were granted leave to be realigned as parties plaintiff. Upon allowance of plaintiffs' motion for summary judgment the circuit court entered judgment holding the ordinance invalid. The appellate court affirmed (123 Ill. App. 3d 468), and we allowed defendants' petition for leave to appeal (94 Ill. 2d R. 315). The facts are adequately stated in the opinion of the appellate court and will be restated here only to the extent necessary to discuss the issues.

The record shows that on January 17, 1983, the board of commissioners of Cook County enacted an ordinance in which it is stated that pursuant to the home rule authority granted by the 1970 Constitution the ordinance supersedes "that portion of Chap. 34, Sec. 908 Ill. Rev. Statutes [section 61.4 of 'An Act to revise the law in relation to the election of county commissioners in Cook County and to fix their term of office'], regarding the veto power of the President of the Board of Commissioners of Cook County ***" (Ill. Rev. Stat. 1981, ch. 34, par. 908). Section 61.4 provides that the president of the board of commissioners has the authority to veto ordinances enacted by the county board, and that four-fifths of the members elected to the board may pass an ordinance over his veto. The ordinance reduced the majority required to override a veto from four-fifths to three-fifths. On January 20, 1983, the president of the board vetoed the ordinance, and on January 25, 14 of the 17 members of the board, a four-fifths majority, overrode his veto.

The circuit court held that the ordinance purported to alter the county's form of government without a referendum and was violative of article VII, section 6(f), of the Constitution of 1970. A divided appellate court affirmed.

The issue presented is whether enactment of the ordi-

nance under the county's home rule authority (Ill. Const. 1970, art. VII, sec. 6(a)) effected an alteration in the "form of government," as contemplated in article VII, section 6(f) (Ill. Const. 1970, art. VII, sec. 6(f)), without approval by referendum. Section 6(a) of article VII, in pertinent part, provides:

> "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." (Ill. Const. 1970, art. VII, sec. 6(a).)

Section 6(f) of article VII, in pertinent part, provides:

> "A home rule unit shall have the power subject to approval by referendum to adopt, alter or repeal a form of government provided by law ***." Ill. Const. 1970, art. VII, sec. 6(f).

Defendants cite the statement in Justice Linn's dissenting opinion in the appellate court explaining that the reason for enacting the statute requiring a four-fifths veto override was to insure that the commissioners representing the area outside of Chicago were not dominated by the commissioners within Chicago. Justice Linn said:

> "At the time of the passage of the State statute providing for a four-fifths majority, there were 15 members on the board of commissioners, 10 from the city and five from the suburbs. On any given proposition, 15 votes were cast. A three-fifths majority, or nine votes, would have enabled the 10 city commissioners consistently to override the vetoes of a president from the suburbs, totally excluding a suburban voice in an override vote. Thus, as the trial court noted, the 'obvious purpose' of the four-fifths majority was to prevent one part of Cook County from dominating county government. The underlying rationale of the four-fifths majority is to insure that the second district (the area outside Chicago) will have a voice in overriding presidential vetoes. Because other

counties do not have the unique two-district plan that Cook County has, there was never a need for these other counties to require a four-fifths majority." (123 Ill. App. 3d 468, 483-84.)

Defendants contend that this historical rationale is not undermined by lowering the required vote from four-fifths to three-fifths, because under the three-fifths provision, 11 votes are required to override a presidential veto; and with 10 city members and 7 suburban members, neither group has a sufficient number of members to override a veto without at least one vote from the other contingent. Therefore, they assert that the veto-override ordinance does not change the historic balance of powers in Cook County's two multimember district form of government. They submit that because the form of government was not changed, the power sought to be exercised was not required to be subjected to approval by referendum.

Citing *Pechous v. Slawko* (1976), 64 Ill. 2d 576, plaintiffs argue that the ordinance effects a change in the "form of government" because the veto power is a central element in defining the fundamental relationship between the board and the president. They assert that because the board made no provision to submit the ordinance for referendum approval by the voters of Cook County and, indeed, expressly declined the circuit court's invitation to amend the ordinance to do so, its enactment was void *ab initio*.

In determining whether the ordinance effects an alteration in the "form of government" as contemplated in section 6(f) of article VII of the Constitution (Ill. Const. 1970, art. VII, sec. 6(f)), an examination of the proceedings of the Sixth Illinois Constitutional Convention is of assistance. This court has long recognized that the debates and proceedings aid in determining the intent of the drafters of the Constitution. (*Drury v. County of Mc-*

*Lean* (1982), 89 Ill. 2d 417; *People ex rel. Keenan v. McGuane* (1958), 13 Ill. 2d 520.) The Report of the Committee on Local Government of the constitutional convention of 1970 contains an explanation of the meaning of "form of government" as used in section 6(f):

> "But more than the manner of electing the county board is included within the meaning of 'form of government.' It also includes the relative powers and functions of the county board and the chief executive officer of the county. Thus this paragraph contemplates that the General Assembly will provide for various patterns of county administrative organization—perhaps including the election of a county executive officer or the appointment of a county manager or administrative officer—and that counties will be permitted to select among these plans by referendum." 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1667.

It is obvious that reducing the vote necessary to override the president's veto from four-fifths to three-fifths effects a diminution of the power of the president and an augmentation of the power of the board. It is difficult to hypothesize a purported exercise of home rule authority which more clearly alters "the relative powers" between the "county board and the chief executive officer of the county."

In *Pechous v. Slawko* (1976), 64 Ill. 2d 576, the relevant statutes provided that the mayor possessed the authority to appoint and remove certain village officers. By ordinance, the council removed those officers and appointed replacements. This court held that under the relevant provisions of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 1—1—1 *et seq.*) the statutory pattern established the relative powers and functions of the executive and legislative branches and that the transfer of the appointive power from the executive to the legislative branch effected without a referendum was unconstitutional.

The enactment of the ordinance here altered the county's form of government and, absent submission to approval by referendum as required by article VII, section 6(f), of the Constitution, the ordinance was invalid. We note parenthetically that if the Constitution authorized the board to effect the proposed alteration without referendum, there would appear to be no limitation on the extent to which the board could reduce the president's veto power.

Defendants, relying on *Allen v. County of Cook* (1976), 65 Ill. 2d 281, argue that our holding there that a change in the number of votes required to pass legislation did not constitute a change in the county's form of government, is applicable here. Defendants' reliance on Allen is misplaced. In *Allen*, the relevant statute provided that appropriations in excess of $2,500 required a two-thirds vote of the members of the board. The board enacted an ordinance which purported to supersede the statute and provided that sums in excess of $5,000 could be appropriated by action of a simple, rather than a two-thirds, majority. The ordinance which the court upheld in *Allen* did not affect the two districts created under article VII, section 3(c), of the Constitution of 1970, the number of members of the board to be elected from those districts, or the powers of the board and its president, and therefore did not alter the county's form of government.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*