796 F.2d 999
 FIRST NATIONAL BANK OF WAUKESHA, Petitioner,
v.
Robert W. WARREN, Judge, United States District Court for
the Eastern District of Wisconsin, Respondent.
Federal Deposit Insurance Corporation, Real party in interest.
 No. 86-1456.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 5, 1986.
Decided July 24, 1986.
 
 John A. Busch, Michael, Best & Friedrich, Milwaukee, Wis., for petitioner.
 William J. French, Gibbs, Roper, Loots & Williams, Milwaukee, Wis., for respondent.
 Before CUMMINGS, Chief Judge, and EASTERBROOK and RIPPLE, Circuit Judges.
 EASTERBROOK, Circuit Judge.
 
 
 1
 Robert Nanz ran up large debts by kiting checks. He left a half-dozen banks holding worthless paper and spent some time in jail. One of his victims was the First National Bank of Waukesha. The Federal Deposit Insurance Corp. believes that another victim was the American City Bank & Trust Co. of Milwaukee, a defunct bank. The FDIC, acting as receiver, sold some of American City Bank's claims (including, it says, the right to bring this suit) to itself in its corporate capacity. The FDIC contends that the Bank of Waukesha defrauded American City Bank by arranging for two loans of $250,000 to cover part of the deficit in Nanz's account. American City Bank lent the $500,000, which was deposited directly into Nanz's account at American City Bank and transferred forthwith to the Bank of Waukesha, which promptly paid $428,000 to cover a check against Nanz's account, a check it had certified despite the absence of funds in that account. The nominal borrowers never repaid American City Bank. The FDIC's theory is that these borrowers--one the Chairman of the Board of the Bank of Waukesha--were in cahoots with Nanz and the Bank in an effort to reduce the Bank's losses. Each, according to the FDIC, misrepresented his personal assets to obtain the loan and then filed a petition for bankruptcy.
 
 
 2
 We do not know whether the FDIC can prove its claims, because the case has yet to go to trial. It began as an action sounding in fraud and unjust enrichment. The fraud component presented problems under the statute of limitations, but the FDIC articulated a theory of quasi-contract and constructive trust that persuaded the district judge not to dismiss the case. The district court set the case for a jury trial, which the Bank of Waukesha had requested. The parties estimated that the trial would last five weeks. Two weeks before the trial was to begin, the FDIC stated that it was electing to proceed solely on its theory of unjust enrichment. The FDIC sought to avoid the jury trial. The district court agreed with the FDIC that its election overcame the Bank of Waukesha's demand for a jury trial. A week before trial the judge stated in open court: "I conclude ... on the basis of Sears Roebuck, Roberts v. Sears & Roebuck, 617 Fed.2d, 460, a 1980 case, that restitution for the disgorgement of undue enrichment is an equity remedy with no right to trial by jury--from Page 465 of the Roberts case. ... I am sometimes prone to flop around and not get too concerned about other circuits, but when you have got a Seventh Circuit case directly on point, that is the law of the case. So I'm forced to the conclusion that we have a Court trial for unjust enrichment seeking the disgorgement of the allegedly unjust proceeds...."
 
 
 3
 The Bank of Waukesha immediately filed a petition for a writ of mandamus, asking us to compel the district court to hold a jury trial. We stayed the trial and set the case for accelerated briefing and oral argument. The only thing clear after our full consideration is that very little is clear. Roberts v. Sears, Roebuck & Co., 617 F.2d 460, 465 (7th Cir.), cert. denied, 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980), does say that "[r]estitution for the disgorgement of unjust enrichment is an equitable remedy with no right to a trial by jury", but this is obiter dictum. The question in the case was whether the plaintiff, having already had a jury trial and recovered damages, could have a second go-round on "equitable" theories; the court held that one bite at the apple is enough, and whether there should have been a jury trial in an equitable action (had there been one) was irrelevant in Roberts.
 
 
 4
 The full picture is more complex. Remedies known as "restitution" were available in courts of law and equity alike before their merger, and terms such as "restitution" and "unjust enrichment" have slowly changed from distinctive forms of action to measures of damages available in actions of all sorts. See Goff & Jones, The Law of Restitution (2d ed. 1978); Dobbs, Handbook on the Law of Remedies 229-36 (1973); 1 Palmer, The Law of Restitution Sec. 1.1 (1978). The evolution of the legal terms, coupled with the merger of the court systems, makes it difficult to say when a request for "restitution" or "constructive trust" is distinctively legal and when it is distinctively equitable--if these distinctions any longer have meaning for remedies measured solely in money. See Medtronic, Inc. v. Intermedics, Inc., 725 F.2d 440 (7th Cir.1984). Roberts supported its statement with two cases--SEC v. Commonwealth Chemical Securities, Inc., 574 F.2d 90, 94-97 (2d Cir.1978); SEC v. Asset Management Corp., 456 F.Supp. 998, 999-1000 (S.D.Ind.1978)--that involve a very different kind of disgorgement remedy: an order in a suit by a public agency compelling the defendant to pay money to a victim, a third party not involved in the litigation. In such cases the agency seeks no money for itself. The characterization of these actions as "equitable" does not control when as here the plaintiff seeks money for its own coffers.
 
 
 5
 The parties, anticipating that we would not think Roberts dispositive, press with great vigor competing characterizations of the FDIC's claim. The Bank of Waukesha insists that the claim is "legal" because the FDIC seeks money damages on account of fraud. "Unjust enrichment," the Bank insists, is just another way to plead fraud, and the FDIC is not entitled to a "constructive trust" because the Bank paid out the funds and has nothing left that can be held in trust, constructive or express. The alternative to fraud is breach of contract, and this too is legal, if it is available at all given the lack of privity between the banks. The FDIC replies that the remedy is "equitable" because it seeks damages measured by the Bank of Waukesha's gain rather than the American City Bank's loss. The Bank of Waukesha is at least $428,000 to the good, according to the FDIC, and it is entitled to this plus any profit the Bank of Waukesha made. An accounting for profits sometimes is equitable if very complex; the FDIC says its claim also should be treated as equitable. Because the prime rate of interest (at which the Bank of Waukesha could have re-lent the $428,000) exceeded 15% in the late 1970s, the FDIC claims it is entitled to more than $2 million under this approach. The remedy at law is "inadequate," according to the FDIC, because under Wisconsin law the rate of interest on the $500,000 the American City Bank lost would be much lower. To this the Bank of Waukesha replies that the remedy the FDIC describes is at law if available at all, and that a remedy measured by American City Bank's loss is not "inadequate" just because it is lower than some alternative remedy.
 
 
 6
 We could go on, but this is enough to show the nature of the dispute. The parties disagree about the appropriate characterization of the loans made by American City Bank and about the characterization of the proceeds that were briefly in the hands of the Bank of Waukesha. They disagree about the appropriate remedies for any wrongs and about the availability of prejudgment interest. Decisions about the characterization of the wrong usually are for the trier of fact, and questions about the nature of the remedy are for the district court in the first instance. The trier of fact has yet to characterize these events, to decide who did what to whom and for whose benefit. The district judge has yet to decide whether prejudgment interest would be available on the $500,000, and if so at what rate. The parties want us to jump the gun, to resolve these important issues in advance of trial, indeed in advance of a decision by the district court.
 
 
 7
 The request presents all of the vices of an interlocutory appeal. The trial, which was to have been held in April 1986, has been blocked. The district court's trial calendar has been disrupted; it is not easy to schedule (and then reschedule) a five-week trial. Witnesses have had to rework their plans and do not know when they must appear. Meanwhile we are asked to decide some abstract questions about the characterization of banking transactions and the availability of prejudgment interest under Wisconsin (maybe federal) law. We do not have a complete record on which to resolve them, we do not have the views of the district court, and we do not know whether their resolution is important to the case. Perhaps the FDIC will fail to prove that the borrowers misled the American City Bank or that the Bank of Waukesha was responsible for their conduct. In that event none of today's disputes matters. If the FDIC does prove its claims, however, the trial is sure to present still other issues that will bring this case to us a second time. All of the reasons that have led the Supreme Court to rebuff requests to enlarge the scope of interlocutory appeals counsel against interlocutory review here. See, e.g., Richardson-Merrell, Inc. v. Koller, --- U.S. ---, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985); Gardner v. Westinghouse Broadcasting Co., 437 U.S. 478, 98 S.Ct. 2451, 57 L.Ed.2d 364 (1978); Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); Flynn v. Merrick, 776 F.2d 184 (7th Cir.1985); United States General, Inc. v. Albert, 792 F.2d 678 (7th Cir. 1986). If the Bank of Waukesha had taken an interlocutory appeal, we would have had no jurisdiction. If the district court had certified a question for interlocutory appeal under 28 U.S.C. Sec. 1292(b), we would have refused to accept the appeal.
 
 
 8
 The Bank insists this is irrelevant, because the Supreme Court has held that an appellate court must issue a writ of mandamus whenever a district judge incorrectly declines to empanel a jury. It relies on Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 511, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1959), and Dairy Queen, Inc. v. Wood, 369 U.S. 469, 472, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962). Some courts understand Beacon Theatres and Dairy Queen in this way. E.g., In re Zweibon, 565 F.2d 742, 745-76 (D.C.Cir.1977). Others understand Beacon Theatres and Dairy Queen as giving appellate courts discretion to issue the writ but as not requiring them to do so unless the right to a jury trial is clear. E.g., In re Don Hamilton Oil Co., 783 F.2d 151 (8th Cir.1986). Neither of these lines of cases explains why Beacon Theatres and Dairy Queen grant or withhold from appellate courts discretion to issue or withhold the writ; neither line of cases discusses why mandamus ever should be available to direct district courts to hold jury trials. We therefore take a closer look at the Supreme Court's decisions.
 
 
 9
 Neither Beacon Theatres nor Dairy Queen answers the question: Why mandamus? The Court stated in Beacon Theatres, 359 U.S. at 511, 79 S.Ct. at 957: "the right to grant mandamus to require jury trial where it has been improperly denied is settled." That is the whole discussion, although a footnote collected some cases in which this proposition had been "settled." Dairy Queen then said of Beacon Theatres that the decision "emphasizes the responsibility of the Federal Courts of Appeals to grant mandamus where necessary to protect the constitutional right to trial by jury". 369 U.S. at 472, 82 S.Ct. at 897. Again the Court did not say why mandamus, rather than an appeal from the final judgment, is the right way to protect the right to jury trial conferred by the seventh amendment. Surely the answer is not, as the Bank of Waukesha maintains, that there is a constitutional right at stake. Much federal litigation involves constitutional rights, but the nature of the right does not dictate whether review comes in mid-course or at the end of the district court's proceedings. Jury trial is not the most essential of rights, either. The right to a jury trial and the right to indictment by a grand jury are the only two provisions of the Bill of Rights that the Supreme Court has not applied to the states as important components of ordered liberty.
 
 
 10
 Here is note 20 in Beacon Theatres, which appears after the word "settled":
 
 
 11
 20 E.g., Ex parte Simons, 247 U.S. 231, 239-40 [38 S.Ct. 497, 498, 62 L.Ed. 1094]; Ex parte Peterson, 253 U.S. 300, 305-06 [40 S.Ct. 543, 545, 64 L.Ed. 919]; Bereslavsky v. Caffey, 161 F.2d 499 (C.A.2d Cir.); Canister Co. v. Leahy, 191 F.2d 255 (C.A.3d Cir.); Black v. Boyd, 248 F.2d 156, 160-61 (C.A.6th Cir.). Cf. Bruckman v. Hollzer, 152 F.2d 730 (C.A.9th Cir.). But cf. In re Chappell & Co., 201 F.2d 343 (C.A.1st Cir.). See also LaBuy v. Howes Leather Co., 352 U.S. 249 [77 S.Ct. 309, 1 L.Ed.2d 290].
 
 
 12
 The two cases in which the Supreme Court "settled" this proposition, Ex parte Simons and Ex parte Peterson, preceded the creation of the modern system of appeals and review by certiorari. In each the Supreme Court directly reviewed the decision of a single district judge. In each the available prerogative writs included certiorari, which does not require a "final decision" in the lower court. Peterson grew out of a reference to a special master (an "auditor"), not a decision whether any trial eventually would be to a jury, and the Court declined to award relief by mandamus or any other route. This makes Simons the important precedent for Beacon Theatres.
 
 
 13
 Simons involved a contract to make a will. It arose before the merger of the law and equity sides of the federal courts. The complaint pleaded the claim of breach of contract in two ways. The district judge transferred one of the two counts of the complaint to the equity side of the court. This raised the specter of two trials on a single claim for relief. The Court, in an opinion by Justice Holmes, held the transfer unwarranted and issued a writ of mandamus. Justice Holmes remarked (247 U.S. at 239-40, 38 S.Ct. at 498): "It is an order that should be dealt with now, before the plaintiff is put to the difficulties and the Courts to the inconvenience that would be raised by a severance that ultimately must be held to have been required under a mistake. It does not matter very much in what form an extraordinary remedy is afforded in this case. But as the order may be regarded as having repudiated jurisdiction of the first count, mandamus may be adopted...." The passage contains two justifications. One, for the selection of mandamus over certiorari, is that the district court denied its own jurisdiction. This is a traditional ground for the use of mandamus. The other, for interlocutory review, is that it is better to solve the problem at once than to permit the district court to waste its own and the parties' time by holding two trials. This justification supports any kind of interlocutory review. Has the district court erred by denying a request for discovery? Better review the issue now, lest it hold a trial that is doomed to reversal if the requester loses. Has the district court disqualified (or not disqualified) counsel? Better review the issue now, to avoid the risk of multiple trials if the district court made a mistake.
 
 
 14
 Simons does not distinguish the denial of a jury trial from any other interlocutory order, and the conclusion that interlocutory orders should be reviewed at once has been rejected in subsequent cases too numerous to count. The justification is unpersuasive because it assumes that the work of the appellate court is already done. If the appellate court knows that the district court's decision is wrong, it is best to act immediately. But in deciding whether to entertain an interlocutory appeal or petition for mandamus, the appellate court must decide what effect this will have on future cases. How many future litigants will seek interlocutory review? All of these requests disrupt ongoing trials; all present incomplete records that may lead to hasty or mistaken appellate decisions; all seek appellate review of issues that may turn out to be unimportant to the disposition of the litigation and therefore may waste everyone's time. If most decisions by district courts are correct, then the costs of reviewing the many cases (including the mistakes introduced by hasty appellate review) exceed the costs of allowing the few mistaken decisions to go uncorrected until after final judgment. The judgment of Congress embodied in the final decision rule of 28 U.S.C. Sec. 1291, and the judgment of the Supreme Court in many cases decided after Simons, Beacon Theatres, and Dairy Queen, is that the costs of interlocutory review in the run of cases exceed the costs of deferred review. The exceptional case--the one in which the injury from a final disposition of an important issue divorced from the merits escapes appellate review--is handled by the "collateral order" doctrine. See Mitchell v. Forsyth, --- U.S. ---, 105 S.Ct. 2806, 2815-17, 86 L.Ed.2d 411 (1985). As a rule the denial of a jury trial could not qualify as a "collateral order." It is reparable on appeal by reversal and a remand for a new trial, with a jury. And as this case demonstrates, the question may be closely related to the merits. Whether the Bank of Waukesha gets a jury trial depends on the appropriate characterization of the FDIC's claim and on the damages available for fraud.
 
 
 15
 Sometimes, however, the injury from the denial of a request for a jury trial is not easily repaired on appeal. In Simons the equitable claim might have gone to trial first. Had it done so, the denial of a jury trial would not have been a reason to reverse the judgment. There is no right to a jury unless the claim is one "at common law" within the meaning of the seventh amendment. The judgment on the equitable claim, invulnerable on appeal, might have foreclosed the legal claim because of issue preclusion (collateral estoppel) or claim preclusion (res judicata). So the timing of the trials might have deprived the party of a jury and the appellate court of the authority to adjudicate the question whether there should be a jury trial. The foreclosure of review--coupled with Justice Holmes's reminder that mandamus is available when a district court wrongly declines to exercise its jurisdiction--supported the use of mandamus. The statute, 28 U.S.C. Sec. 1651(a), authorizes courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The use of mandamus in Simons satisfied this statutory standard.
 
 
 16
 Beacon Theatres presented almost the same problem. The plaintiff asked for a declaratory judgment that an arrangement for licensing films did not violate the antitrust laws. The defendant responded with a counterclaim for treble damages. The district judge proposed to try the plaintiff's claim first, calling it "equitable," and the findings after the bench trial on issues such as market power would have bound the parties in their dispute about treble damages. The Court thought that issue preclusion after the bench trial would remove from the jury questions that it should be allowed to decide. 359 U.S. at 504, 511, 79 S.Ct. at 953, 957. An appeal at the end of the case would be too late. This must have been what the Court meant in Dairy Queen in saying that Beacon Theatres had established the responsibility of the appellate courts "to grant mandamus where necessary to protect the constitutional right to trial by jury" (369 U.S. at 472, 82 S.Ct. at 897, emphasis added). When an appeal will not protect the right, mandamus is "necessary."
 
 
 17
 There is a second thread in Beacon Theatres and Dairy Queen, one suggested by the citation of LaBuy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957). LaBuy held that an appellate court may use mandamus to achieve "supervisory control" (id. at 259, 77 S.Ct. at 315) of district courts. Judge LaBuy referred a case to a special master. All agreed that such references occasionally are appropriate, but the court of appeals thought the case not one of those occasions and issued a writ of mandamus. The Supreme Court stated that because "the Court of Appeals could at some stage of the antitrust proceedings entertain appeals in these cases, it has the power in proper circumstances, as here, to issue writs of mandamus reaching them." Id. at 255, 77 S.Ct. at 313. This comes close to saying that because the district court's decision was fully reviewable on appeal, it was appropriate to issue mandamus rather than wait for the inevitable appeal (and the inevitable reversal). Because the writ was not "in aid of jurisdiction" but was an anticipation of jurisdiction, it was appropriate.
 
 
 18
 Dairy Queen may be an example of this kind of writ of "supervisory control." The district court struck a party's jury demand because it concluded that the case had equitable as well as legal components. The court portrayed the legal components as "incidental" (369 U.S. at 477 & n. 13, 82 S.Ct. at 899 n. 13) to the equitable ones and, invoking the "clean up" doctrine that allowed courts of equity to hear legal issues when necessary to "clean up" the whole dispute, it set the case for a bench trial. The Supreme Court concluded that the district court got it backwards: when there are legal as well as equitable issues, the seventh amendment requires a jury trial that will "clean up" the equitable claims. Because there was to be only one trial in Dairy Queen, an appeal would have been sufficient to ensure that all legal issues were heard by a jury. If the reason for mandamus in Dairy Queen was to get to this end without waiting for the trial, it is a descendant of LaBuy. But an appeal might not have been sufficient to ensure that the equitable claims, too, were tried to a jury. On direct appeal there would have been no reason to reverse the judgment of the equitable claims, on which no one was entitled to a jury, just because the "incidental" legal claims were juryable. So even in Dairy Queen there was a potential argument that the deprivation of the jury trial in the first instance was irreparable, compared with the result the Court ordered--one trial, with all issues before the jury.
 
 
 19
 If it is an offspring of LaBuy, then Dairy Queen may suffer the fate of LaBuy. Like the American City Bank, LaBuy is defunct. Although the Court has not yet erected the tombstone, it has ordered flowers. The dissenting Justices in LaBuy argued that mandamus should be reserved for truly extraordinary cases and should not be used when an issue is reviewable on appeal. 352 U.S. at 260-61, 267-69, 77 S.Ct. at 316, 319-20 (Brennan, J., joined by Frankfurter, Burton & Harlan, JJ., dissenting). Justice Brennan relied on a series of cases enforcing the requirement of Sec. 1651 that the writ be in aid of appellate jurisdiction, which means at least that the issue be effectively unreviewable on appeal from a final judgment. In the last 20 years this view has prevailed.
 
 
 20
 Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), offers one example. A district court ordered the prosecutor to supply a detailed bill of particulars in a criminal case, one so detailed it amounted to discovery. The court of appeals issued a writ of mandamus. The Supreme Court reversed, relying on the same language from cases before LaBuy that had been the foundation of Justice Brennan's dissent in LaBuy. E.g., Roche v. Evaporated Milk Association, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185 (1943); DeBeers Consolidated Mines, Ltd. v. United States, 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945). LaBuy was treated as one "where a district judge displayed a persistent disregard of the Rules of Civil Procedure" (389 U.S. at 96), confining it to the rare occasion when a judge repeatedly thumbs his nose at an acknowledged rule of law. Kerr v. District Court, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976), is another example. The district court ordered extensive discovery, including materials claimed to be privileged. The Supreme Court held that the aggrieved party could not obtain immediate review by mandamus. "[I]t is in the interest of the fair and prompt administration of justice to discourage piecemeal litigation. It has been Congress' determination since the Judiciary Act of 1789 that as a general rule 'appellate review should be postponed ... until after final judgment has been rendered by the trial court.' A judicial readiness to issue the writ of mandamus in anything less than an extraordinary situation would run the real risk of defeating the very policies sought to be furthered by that judgment of Congress." 426 U.S. at 403, 96 S.Ct. at 2124 (ellipsis in original; citations and footnote omitted). The Court cited and quoted earlier cases describing mandamus as a remedy confined to abdication of jurisdiction, usurpation of power, and extraordinary situations. LaBuy, although relied on by the petitioner, was not mentioned. Neither was Simons, Dairy Queen, or Beacon Theatres.
 
 
 21
 A third example is Will v. Calvert Fire Insurance Co., 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978). The district court stayed federal proceedings in favor of state proceedings, an action with much greater potential than a reference to a master (the subject of LaBuy ) to blot out the federal claim. By the time the district court vacated the stay (if it ever did), the state action might have gone to judgment, precluding the federal claim. Although this case therefore shared features of both LaBuy and Beacon Theatres, the Supreme Court held that it was impermissible to issue the writ. Once more it relied on the cases describing mandamus as an extraordinary remedy in aid of jurisdiction, 437 U.S. at 661-62, 666-67, 98 S.Ct. at 2556-57, 2559 (plurality opinion). Even when the district court's action could kick the case out of federal court, an appellate court should use mandamus only when the district court's error is patent. Beacon Theatres was characterized as a case in which the right was clear (437 U.S. at 666 n. 7, 98 S.Ct. at 2559 n. 7). And LaBuy was characterized as a remnant of bygone times: "Although in at least one instance we approved the issuance of the writ upon a mere showing of abuse of discretion, LaBuy v. Howes Leather Co., 352 U.S. 249, 257, 77 S.Ct. 309, 314, 1 L.Ed.2d 290 (1957), we warned soon thereafter against the dangers of such a practice." 437 U.S. at 665-66 n. 7, 98 S.Ct. at 2559 n. 7 (citing Will v. United States ).
 
 
 22
 Although this language is from the opinion of only four Justices in Calvert, the whole Court endorsed the position in Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980). The court of appeals had issued a writ of mandamus compelling the district judge to vacate his order for a new trial in an antitrust case and enter judgment. The court of appeals' rationale was that the lengthy new trial (the first lasted four weeks) would be wasted. The Court again explained that writs of mandamus undermine the limits on interlocutory appeals and that "[o]nly exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy." 449 U.S. at 35, 101 S.Ct. at 190. Will v. United States, Kerr v. District Court, and similar cases were cited repeatedly. LaBuy, Beacon Theatres, Dairy Queen, and Simons were not cited at all. The Court concluded: "In order to insure that the writ will issue only in extraordinary circumstances, this Court has required that a party seeking issuance have no other adequate means to attain the relief he desires, and that he satisfy the 'burden of showing that [his] right to issuance of the writ is "clear and indisputable." ' " 449 U.S. at 35, 101 S.Ct. at 190 (brackets in original; citations omitted). The only opinion in the last 20 years in which the Supreme Court has approved the use of mandamus is consistent with this. See Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), allowing use of the writ to correct a clearly erroneous remand of a case to state court, a remand that if not corrected by mandamus could not be corrected at all. See also Gravitt v. Southwestern Bell Tel. Co., 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977) (limiting Thermtron ).
 
 
 23
 The consequence of the developments since Will v. United States is that we must separate the two strands of the rationale in Simons, Beacon Theatres, and Dairy Queen. To the extent these cases stand for the proposition that appellate courts should issue "supervisory" mandamus to spare the parties the need to go through the trial and present a claim of error on appeal, they have been undermined. To the extent these cases stand for the proposition that mandamus will lie when the "party seeking issuance [has] no other adequate means to attain the relief he desires" (Allied, 449 U.S. at 35, 101 S.Ct. at 190), they are as sound now as they ever were--provided the right to the jury trial is "clear and indisputable." The use of mandamus gives the person claiming a right to a jury trial greater access to interlocutory review than does the "collateral order" doctrine under 28 U.S.C. Sec. 1291. As we have emphasized, one of the requirements of the collateral order doctrine is the independence of the merits and the order presented on appeal; the question whether there should be a jury trial may not be independent of the merits. Simons, Beacon Theatres, and Dairy Queen, then, sometimes authorize the use of mandamus when the rebuff of a demand for a jury would not be appealable, but they do this only when a clear right to a jury could not be vindicated on appeal from the final judgment.
 
 
 24
 This has become a tractable case. The FDIC wants to take a one-count complaint to trial. If the FDIC prevails, the Bank of Waukesha may present on appeal its contention that it was entitled to a jury trial. The decision on appeal will vindicate that right, if the Bank has one. There is no possibility of issue or claim preclusion. The Bank may be exposed to the travail of a second trial, but almost any dispute in the course of litigation has the potential to cause a second trial if the district court errs. We cannot issue the writ here without duplicating the problems of interlocutory appeals. Because we may not issue the writ, we express no view on the merits.
 
 
 25
 The petition for a writ of mandamus is denied.
 
 
 26
 RIPPLE, Circuit Judge, dissenting.
 
 
 27
 This year has been a bad one for the seventh amendment right to a trial by jury. Congress has prevented the district courts from conducting jury trials in civil cases by failing to allocate sufficient funds. Now, this court, despite long-standing Supreme Court precedent to the contrary which has been considered "too clear for discussion"[1] and, despite clear precedent to the contrary in the lower federal courts, denies a litigant the opportunity to seek, by way of mandamus, review of the denial of a jury trial. Because I disagree with the majority's analysis of the mandamus issue, I respectfully dissent.
 
 
 28
 * The use of a petition for a writ of mandamus to secure a jury trial in the face of a district court's denial is well-settled. It is clear that the Supreme Court's decisions in both Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), and Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), support the use of mandamus to correct the improper denial of a jury trial. Indeed, as the majority indicates, the Court has squarely stated that it is "the responsibility of the Federal Courts of Appeals to grant mandamus where necessary to protect the constitutional right to trial by jury." Dairy Queen, 369 U.S. at 472, 82 S.Ct. at 897. Indeed, the Beacon Theatres Court noted that "the right to grant mandamus to require jury trial where it has been improperly denied is settled." 359 U.S. at 511, 79 S.Ct. at 957.
 
 
 29
 It is hardly a startling revelation that Dairy Queen and Beacon Theatres involved mixed claims--i.e. both legal and equitable. However, as a fair reading of the cases demonstrates, the Supreme Court's mandate that federal appellate courts must grant the writ "where necessary to protect the constitutional right to trial by jury," Dairy Queen, 369 U.S. at 472, 82 S.Ct. at 897, is hardly dependent on this factor. Rather, that directive is grounded in two basic policy concerns: (1) the judicial obligation "to zealously guard the right to trial by jury," Bruce v. Bohanon, 436 F.2d 733, 736 (10th Cir.), cert. denied, 403 U.S. 918, 91 S.Ct. 2227, 29 L.Ed.2d 694 (1971); and (2) concerns of judicial economy. The basis for the first of these concerns is self-explanatory. A party ought not be required to dissipate his time and economic resources participating in a governmental proceeding which the Constitution explicitly says he need not endure. The second concern, judicial economy, is closely related to the first and is also self-evident. Our judicial process can hardly afford the time and expenditure involved in conducting a useless proceeding. As the Supreme Court noted in Ex parte Simons, 247 U.S. 231, 38 S.Ct. 497, 62 L.Ed.2d 1094 (1918):
 
 
 30
 If we are right, the order was wrong and deprived the plaintiff of her right to a trial by jury. It is an order that should be dealt with now, before the plaintiff is put to the difficulties and the Courts to the inconvenience that would be raised by a severance that ultimately must be held to have been required under a mistake.
 
 
 31
 Id. at 239, 38 S.Ct. at 497.
 
 
 32
 The policies underlying the Simons decision have been recognized consistently as the basis for employing mandamus as a remedy in denial of jury trial contexts. Indeed, courts of appeals both before and after Beacon Theatres and Dairy Queen have uniformly recognized the utility of the rule. See, e.g., In re Vorpahl, 695 F.2d 318, 319 (8th Cir.1982); In re Zweibon, 565 F.2d 742, 745-46 (D.C.Cir.1977); Goldman Sachs & Co. v. Edelstein, 494 F.2d 76, 79 (2d Cir.1974); Black v. Boyd, 248 F.2d 156, 160 (6th Cir.1957). No court of appeals has decided that the writ of mandamus is an inappropriate vehicle by which to challenge the denial of a jury trial. See, e.g., Owens-Illinois, Inc. v. U.S. District Court for Western District of Washington, 698 F.2d 967 (9th Cir.1983) (mandamus is appropriate remedy when right to jury trial is questioned); Myers v. U.S. District Court for District of Montana, 620 F.2d 741 (9th Cir.1980) (accepting mandamus as means to challenge denial of jury consideration of counterclaim); Maldonado v. Flynn, 671 F.2d 729 (2d Cir.1982) (mandamus is the accepted means to challenge denial of jury trial); Lee Pharmaceuticals v. Mishler, 526 F.2d 1115 (2d Cir.1975) (mandamus is appropriate means by which to challenge denial of trial by jury); Higgins v. Boeing Co., 526 F.2d 1004 (2d Cir.1975) (same). The majority overstates the import of In re Don Hamilton Oil Co., 783 F.2d 151 (8th Cir.1986). That case held simply that mandamus was not appropriate where, "[e]very court to consider the issue, with one exception later overruled, has held that there is no constitutional right to a jury trial in a [29 U.S.C.] Sec. 217 action." Id. at 151. The court continued: "In view of these decisions and of the questionable nature of the legal issue presented, we deny the petition." Id. at 152. This holding hardly is illustrative of a supposed "line of cases" restricting the use of mandamus to secure a jury trial. Moreover, the majority has ignored the Eighth Circuit's clear pre-In re Don Hamilton Oil Co. statement that "[t]he remedy of mandamus in determining the right to a jury trial is firmly settled." In re Vorpahl, 695 F.2d at 319 (citing Dairy Queen and Beacon Theatres).
 
 
 33
 It is also hardly a startling revelation that the Supreme Court has stated, as a general principle, that mandamus is an extraordinary writ and should only be granted in exceptional cases. However, this general cautionary principle does not justify the court's ignoring well-established precedent. The caselaw cited by the majority no more undercuts the Supreme Court's clear direction that mandamus should be employed to protect the right to a jury trial than it undercuts the use of mandamus in other established contexts. See, e.g., Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976) (mandamus is proper mechanism by which to challenge district court's remand of a case properly removed to federal court); Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (mandamus is the proper remedy when transfer has been ordered in violation of the limitations established in 28 U.S.C. Sec. 1404(a)); Union Carbide Corp. v. U.S. Cutting Service, Inc., 782 F.2d 710 (7th Cir.1986) (mandamus is appropriate to review orders denying motions to recuse or disqualify); Bailey v. Sharp, 782 F.2d 1366, 1367 (7th Cir.1986) (mandamus is appropriate mechanism by which an appellate court may review a district court's grant of a new trial without jurisdiction to do so); Bloom v. Barry, 755 F.2d 356 (3d Cir.1985) (mandamus is proper remedy when transfer is ordered in violation of the limits established in 28 U.S.C. Sec. 1404(a)); In re Scott, 709 F.2d 717 (D.C.Cir.1983) (same).
 
 
 34
 Moreover, it must be noted, assuming arguendo that use of the writ might not be appropriate in some circumstances where the right to jury trial is at stake, that no such circumstances are evident here. The district court was clearly reluctant to deny First National Bank a jury trial. The parties had intended, over years of extensive discovery, to have the cause of action tried to a jury. Two weeks before the trial, the FDIC altered its pleadings in an apparent attempt to circumvent the jury requirement; the action taken by the majority in this case sanctions this evasive and dilatory behavior.
 
 II
 
 35
 The court does more than ignore the policy concerns underlying the large body of Supreme Court and lower federal court precedent contrary to its holding. It also appears to rely, I respectfully suggest, on an impermissible criterion. It suggests that the petition should be denied because the question whether a jury trial is necessary in this case is an issue of some difficulty. However, it has long been established that the difficulty of the question presented is not, at least in the jury trial context, sufficient reason to deny the petition. As the District of Columbia Circuit remarked in Filmon Process Corp. v. Sirica, 379 F.2d 449, 450-51 (D.C.Cir.1967):
 
 
 36
 [I]t is a fair inference that even on an application for an extraordinary writ for pre-trial relief the Supreme Court expects the courts of appeals to make a determination whether or not there is a right of trial by jury, regardless of whether the quetion [sic] is a close or complicated one, and that the Court would not welcome a doctrine whereby a party's constitutional right to jury trial was trammeled in fact because a court of appeals determined that the issue was doubtful and that it need not and would not decide whether or not the party had the right of trial by jury.
 
 
 37
 Accord Bohanon, 736 F.2d at 735.
 
 III
 
 38
 An intermediate appellate court's primary function is to assure that the litigants before it are treated according to the prevailing legal norms. As lower court judges, our job is to apply the law not to change it. In this case, the majority has, I respectfully suggest, reversed those priorities. Consequently, the parties must wait several years for a definitive determination of their rights and a very busy district judge must try a five week case knowing that he may well have to repeat the exercise again.
 
 
 
 [1]
 9 J. Moore, B. Ward and J. Lucas, Moore's Federal Practice, p 110.28 (2d ed. 1985)