In the Matter of CITY OF SPRING-FIELD, ILLINOIS, Petitioner.

No. 87–1557.

United States Court of Appeals, Seventh Circuit.

Submitted April 16, 1987.

Decided April 28, 1987.

Lawrence C. Dinardo, Chicago, Ill., Fredic Benson, Corp. Counsel, William S. Hanley, Springfield, Ill., for petitioner.

William L. Robinson, Frank R. Parker, Robert B. McDuff, Samuel Issacharoff, Lawyers' Committee for Civil Rights Under Law, Washington, D.C., James C. Craven, Donald M. Craven, Springfield, Ill., Richard B. Jerome, Verner, Lupfert, Bernhard, McPherson, & Hand, Washington, D.C., for respondents Frank McNeil, et al.

Before FLAUM, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

The district court has held that the City of Springfield, Illinois, violated Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, by maintaining a system of at-large elections that prevented black voters from influencing the outcome of the contests. *McNeil v. City of Springfield*, 658 F.Supp. 1015 (1987). The court enjoined the elections scheduled for February 1987, keeping in office the City Council that, the court held, was illegally constituted. No one took a timely appeal from this injunction. The court also ordered the City to draw up a plan to comply with the Voting Rights Act. The City Council adopted a plan that proposed alternative forms of government: one called for a mayor to be elected at large and ten members of the City Council to be elected from single-member districts, and the other used the same structure plus three other officials of the City—three "directors" who would administer the principal bureaucracies of the City—to be elected at large. Either way, the City wanted the election to be "nonpartisan". A nonpartisan election is not one without partisanship but one without primary elections to choose parties' candidates. All candidates participate in a single election, with a runoff if no one receives a majority of the votes.

The district judge approved both the ten-member council and the district lines the City had proposed. But the plaintiffs resisted the at-large election of the three "directors" and the nonpartisan elections. They support a plan under which only the mayor is elected at large, and the mayor then appoints a cabinet (subject to confirmation); all candidates would run in party primaries, and any qualified party could submit a candidate who would be on the ballot in the general election. The plaintiffs contend that the City's proposal is unauthorized under Illinois law (as a prohibited hybrid between the mayor-aldermanic system and Springfield's current system under which the five council members also are the heads of the executive departments) and illegal under the Voting Rights Act to boot. According to the plaintiffs, a hybrid form of government may be adopted only in a referendum, which (to be sufficient) must offer the option of a mayor-aldermanic form. See *Dunne v. County of Cook*, 108 Ill.2d 161, 90 Ill.Dec. 866, 483 N.E.2d 13 (1985); Ill.Const. Art. 7 § 6(f); Ill.Rev.Stat. ch. 46 § 16–7; Ill.Rev.Stat. ch. 24, Art. 3. The City had proposed a referendum on its plan, but the plaintiffs believe that the City's referendum would be inadequate because it would not offer the mayor-aldermanic option.

The City pressed for a decision on the validity of its plan under state and federal law, maintaining that the court must accept the plan if it is lawful. The district court, however, declined to assess the legality of the City's proposal. It instead ordered the Board of Election Commissioners to hold a referendum on May 12, 1987. The referendum would present the City's plans and a third structure of the court's design (based on the plaintiffs' proposal). The voters would be asked to express a separate preference between nonpartisan and party-based elections. The order increased from three to six the number of plans under consideration (each of the proposals could be implemented with or without nonpartisan elections). The court expressly declined to say whether it would order the City to implement whichever plan the voters preferred, instead setting a hearing for May 16 to discuss the effects of the referendum.

The City asks us to direct the district court to give thumbs up or down to its plan before holding a referendum. It says the referendum is unnecessary—because it believes its own proposal lawful and thinks that if its plan is lawful the district court

has no discretion to search for alternatives. It also insists that the referendum, costing more than $60,000, is too expensive. It therefore asks us to issue a writ of mandamus or prohibition or, failing that, to treat the order to hold the referendum as an injunction and the petition as a notice of appeal under 28 U.S.C. § 1292(a)(1).

Section 1292(a)(1), which allows immediate appeal from the grant or denial of interlocutory injunctions, is an exception to the rule that only the final decision in a case is appealable. The final decision rule prevents the delay engendered by multiple appeals and ensures that the appeal, when it comes, presents all the issues in perspective. Many issues wash out along the way. Postponing appellate review avoids the need to address issues that do not affect the outcome of the litigation. The exception in § 1292(a)(1) exists because the grant or denial of a preliminary injunction may create irreparable loss either way and also dramatically affect the final disposition of the case, sometimes without effective recourse if review does not come at once. Yet an expansive definition of "injunction" would eviscerate the final decision rule. Many orders in the course of litigation compel the parties to do something (such as produce documents). To prevent the death by small cuts of the final decision rule, the Supreme Court held that mandatory orders are "injunctions" under § 1292(a)(1) only if they effectively grant or withhold the relief sought on the merits and affect one party's ability to obtain such relief in a way that cannot be rectified by a later appeal (that is, "irreparably"). *Stringfellow v. Concerned Neighbors in Action,* —— U.S. ——, 107 S.Ct. 1177, 1183–84, 94 L.Ed.2d 389 (1987); *Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981). See also, e.g., *Centurion Reinsurance Co. v. Singer,* 810 F.2d 140, 144–45 (7th Cir.1987); *Uehlein v. Jackson National Life Insurance Co.,* 794 F.2d 300, 302–03 (7th Cir.1986); *Donovan v. Robbins,* 752 F.2d 1170, 1172–74 (7th Cir. 1985). This order is an injunction only if it satisfies all aspects of the approach staked out in *Stringfellow* and *Carson.* In fact it satisfies none.

The plaintiffs asked for a change in the way Springfield elects its City Council; the City insists that the at-large system is lawful. The order to hold a referendum does not either decide the merits of this dispute or decree a remedy. No matter which system the voters prefer, the district court will be free to adopt or reject either version of the City's plan. The order to hold a referendum also does not irreparably affect the outcome of the case. If the judge should say, for example: "The voters preferred a mayor-aldermanic system with party-based elections, such a system is lawful under both state and federal law, and therefore it must be used", the City could argue on appeal that its plan is lawful and must be preferred. Appeals dealing with the selection among plans are common. E.g., *League of United Latin American Citizens v. Midland Independent School District,* 812 F.2d 1494 (5th Cir.1987). The method the district court uses to endorse one plan does not foreclose the consideration of others, and if the district court's method is mistaken the City will be vindicated in time. *Stringfellow* held that restrictions on a party's ability to make its case in the district court, and deferral of the resolution of its claims, do not deny an injunction because all claims are open on appeal from the final judgment. So, here, the order to hold a referendum does not grant an injunction, both because the referendum is not the ultimate relief plaintiffs seek and because holding the referendum does not prevent the vindication on a later appeal of any legal entitlement the City possesses.

That the referendum may cost $60,000 does not make the order appealable. A week of trial may cost more, yet an order denying a motion for summary judgment and setting the case for trial is not appealable just on account of its cost and delay. *Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc.,* 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966). Many courts have held that orders to formulate plans in civil rights cases are not injunctions despite their cost, their directory nature, and their potential effect on the outcome. E.g., *Gro-*

*seclose v. Dutton,* 788 F.2d 356 (6th Cir. 1986); *Spates v. Manson,* 619 F.2d 204 (2d Cir.1980) (Friendly, J.); *Taylor v. Board of Education,* 288 F.2d 600 (2d Cir.1961) (Friendly, J.). We agree with these cases. *Frederick L. v. Thomas,* 557 F.2d 373, 379–81 (3d Cir.1977), which goes the other way, allowing an appeal from an order to formulate plans when in the court's view waiting for the "real" injunction would not facilitate appellate review, is highly questionable under subsequent cases such as *Stringfellow* and *Carson.* That a prompt decision would be convenient or would facilitate the resolution of a given case is not enough; interlocutory review might do that sometimes, for which there is 28 U.S.C. § 1292(b), but as a rule review (and the time-consuming decision whether to entertain the appeal) would retard the final disposition and risk unnecessary appellate adjudication. Both the principles behind the final decision rule, and the marching orders of *Stringfellow* and *Carson,* lead to a conclusion that only directives awarding the relief plaintiffs seek or putting the case on a collision course with that relief are "injunctions" under § 1292(a)(1).

■ The City's ability to obtain relief by an eventual appeal dooms its request for mandamus in this case as well. "[T]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations.... In order to insure that the writ will issue only in extraordinary circumstances, this Court has required that a party seeking issuance have no other adequate means to attain the relief he desires and that he satisfy the 'burden of showing that [his] right to issuance of the writ is "clear and indisputable".'" *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34–35, 101 S.Ct. 188, 189–90, 66 L.Ed.2d 193 (1980) (citations omitted). See also, e.g., *Kerr v. United States District Court,* 426 U.S. 394, 402–03, 96 S.Ct. 2119, 2123–24, 48 L.Ed.2d 725 (1976); *First National Bank of Waukesha v. Warren,* 796 F.2d 999, 1005–06 (7th Cir.1986). "[I]t is in the interest of the fair and prompt administration of justice to discourage piecemeal litigation" by interlocutory appeal and mandamus alike. *Kerr,* 426 U.S. at 403, 96 S.Ct. at

2124. Because any error in this case may be corrected on appeal, we withhold mandamus as well. The appeal is the City's "adequate means to attain the relief [it] desires."

The writ is to be used in aid of appellate jurisdiction. 28 U.S.C. § 1651(a); *Allied Chemical,* 449 U.S. at 34–35, 101 S.Ct. at 189–90; *Kerr,* 426 U.S. at 402, 96 S.Ct. at 2123. When the district court's decision imperils the efficacy of the eventual appellate review, the writ may be employed, see *Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976); it also is used when the district court exceeds its jurisdiction. E.g., *Bailey v. Sharp,* 782 F.2d 1366 (7th Cir.1986). Still, "[o]nly exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy." *Allied Chemical,* 449 U.S. at 35, 101 S.Ct. at 190.

The order to hold a referendum is "exceptional" in the sense that no other court has issued such an order (at least the parties have called none to our attention). It is exceptional as well in the degree to which it redirects the operation of the political processes of the City. A court may not lightly convene elections, even in the name of deferring to the political processes of a different sovereign. An order of this sort alters the processes it purports to respect. Still, the lack of precedent for an order is not the sense in which the Supreme Court speaks of "exceptional circumstances". Circumstances are "exceptional" when the injury from delay is very great and the court's ability to set things right on appeal from the final decision is limited. The district court may be mistaken in thinking that a referendum is the appropriate way to proceed, but we have explained why any error is reparable. Novelty does not itself require interlocutory review. If the district court has erred, the error is not so grave that the City's right to the writ is "clear and indisputable", or the cost to the City so dear that immediate review is essential to protect an important interest. The district court's approach is not unambiguously prohibited by any rule of law.

The innovation employed in this case may not stand the test of time, but that is a subject to be explored on appeal from the permanent injunction. We accordingly express no opinion on the wisdom or validity of the district court's order to hold a referendum and no views on when other judicial efforts to affect a city's political processes would meet the standards of *Allied Chemical.*

The petition for mandamus or prohibition is denied. Treating the papers on which the petition was prosecuted as a notice of appeal, we dismiss the appeal for want of jurisdiction.