**MIDWEST MECHANICAL CONTRACTORS, INC.,**
Plaintiff-Appellee,

v.

**COMMONWEALTH CONSTRUCTION CO., et al., Defendants-Appellants.**

No. 85–2659.

United States Court of Appeals,
Fifth Circuit.

Oct. 6, 1986.

Rehearing Denied Nov. 3, 1986.

Allen R. Boudreaux, Boudreaux & Gunn, Thibodaux, La., for defendants-appellants.

Thomas Moore, Frederick G. Thompson, IV, Gould & Moore, Kansas City, Mo., and Charles Lyman, James Ebanks, Giessel, Stone, Barker & Lyman, Houston, Tex., for plaintiff-appellee.

Before WISDOM, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Commonwealth Construction appeals the denial of its motion under 9 U.S.C. § 3 to stay litigation of a breach of contract suit brought by Midwest Mechanical Contractors until after arbitration. Finding that the contract between the parties contains an agreement to arbitrate issues raised in the suit, we reverse the district court's denial of the motion for a stay.

## I

Commonwealth Construction executed a subcontract with Midwest Mechanical Contractors for work in conjunction with Midwest's expansion construction at the Port Acres Sewage Treatment Plant at Port Arthur, Texas. In April 1985, before completion of the project, Commonwealth filed a demand with the American Arbitration Association for arbitration of a dispute between the parties. Midwest objected to arbitration and filed this suit in federal district court, alleging breach of contract and violation of the Texas Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. § 17.01 *et seq.*

Shortly thereafter, the American Arbitration Association found that the issues raised in Commonwealth's demand were arbitrable, and Commonwealth moved to stay litigation pending arbitration in accordance with section 3 of the Arbitration Act, 9 U.S.C. § 1 *et seq.* The district court denied the motion, and Commonwealth's motion for a stay pending this appeal.[1]

---

1. The grant or denial of a stay pending arbitration is appealable under 28 U.S.C. § 1292(a)(1) if the underlying action in which the order was made would have been an action at law before the fusion of law and equity. *Wick v. Atlantic Marine, Inc.,* 605 F.2d 166, 167 n. 2 (5th Cir.

While this appeal was pending, Commonwealth filed a petition to compel arbitration under section 4 of the Act in the Eastern District of Texas. In the ninth defense of its answer, Midwest called the court's attention to Commonwealth's appeal in this case, and asserted "[t]hat the lawsuit filed under Cause No. H–85–2734 [i.e. the case in this appeal] is the proper forum to resolve all issues between Commonwealth and Midwest on the Port Arthur Subcontract and the action herein should be dismissed." In an order within opinion, the district court dismissed Commonwealth's petition to compel arbitration; Commonwealth did not appeal the order.

Commonwealth now argues that its subcontract with Midwest contained a valid arbitration clause, and that the district court erred in not staying Midwest's suit until after arbitration as required by section 3. In response, Midwest argues that the issue of arbitrability was not raised by Commonwealth's motion, is therefore not presented in this appeal, and at any rate is barred by *res judicata.* Midwest also argues that Commonwealth's motion is void because at the time of filing Commonwealth had failed to pay its Texas franchise tax and had forfeited its state corporate charter. Finally, Midwest argues that the contract documents do not require arbitration as asserted by Commonwealth.

## II

Midwest's argument that the issue of arbitrability was not raised in Commonwealth's motion for a stay of litigation under section 3 of the Arbitration Act misreads the Act. Midwest appears to argue that the motion for a stay required the district court to do no more than determine whether arbitration between the parties was actually pending; because it was not, Midwest argues that the motion was properly denied, and that to raise the question of whether the contract between the parties was arbitrable required a motion to compel arbitration under section 4 of the Act.

■■■ Section 3 provides that:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

A motion under this section requests the district court to refrain from further action in a suit pending arbitration, and requires the court to first determine whether there is a written agreement to arbitrate between the parties, and then whether any of the issues raised are within the reach of that agreement. *Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978, 988 (2d Cir.1942). Contrary to Midwest's suggestion, so long as a written agreement to arbitrate exists there is no specific requirement that arbitration actually be pending before a stay of litigation can be granted; in fact, the Supreme Court has affirmed a stay of litigation in which no affirmative demand for arbitration had been made, no motion to compel arbitration had been sought, and there were as yet apparently no ongoing arbitration proceedings. *Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*, 293 U.S. 449, 453–54, 55 S.Ct. 310, 315, 79 L.Ed. 440 (1935). A petition under section 4 of the Arbitration Act, by contrast, is a request that the court compel specific performance of an agreement to arbitrate, and may be made in any district court which would have subject matter jurisdiction over the underlying dispute, in some cases even af-

1979); *see also Enelow v. New York Life Insurance Co.*, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); *Shanferoke Coal & Supply Corp. v. West-*

*chester Serv. Corp.*, 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1935). Midwest does not dispute that the underlying action in this case is at law.

ter a court has already refused to stay proceedings under section 3.[2] *See American Locomotive Co. v. Gyro Process Co.,* 185 F.2d 316, 318 (6th Cir.1950).

■ As noted in the *Kukulundis* case, the issue of whether there is an agreement to arbitrate is a threshold question raised in any motion under section 3. If the issues in a case are within the reach of the agreement, the district court has no discretion under section 3 to deny the stay. Accordingly, Midwest's contention that Commonwealth's motion for a stay under section 3 did not raise the issue of arbitrability is without merit. Moreover, because a district court may order a stay under section 3 even when it cannot compel arbitration in accordance with section 4 of the Act, *Shanferoke*, 293 U.S. at 453, 55 S.Ct. at 315, we hold that a motion to compel arbitration under section 4 is not a prerequisite to raising the issue of arbitrability under section 3, as suggested by Midwest.

### III

■ Midwest next argues that the issue of arbitrability is barred by *res judicata*, since Commonwealth did not appeal the denial of its petition to compel arbitration in a separate action in another federal court. This court has defined the rules of *res judicata* as actually comprising two separate doctrines: "claim" preclusion and "issue" preclusion. *Kaspar Wire Works, Inc. v. Leco Engineering and Machine, Inc.,* 575 F.2d 530, 535 (5th Cir.1978). Claim preclusion "treats a judgment, once rendered, as the full measure of relief to be accorded between the parties on the same 'claim' or 'cause of action.'" *Id.* (quoting *Sea Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974)). Issue preclusion applies when suits involve separate claims, but present some of the same issues, and "bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties." *Id.* 575 F.2d at 535–36. As discussed above, a motion to stay litigation under section 3 and a petition to compel arbitration under section 4 serve separate purposes, and are not required to be presented at one time in the same proceeding. Therefore, the *res judicata* doctrine of "issue preclusion" rather than "claim preclusion" is applicable in this context.

■ Because both an application for a stay of litigation and a petition to compel litigation raise the question of whether there is an actual agreement to arbitrate between the parties, "issue preclusion" will bar relitigation of arbitrability once it has been actually litigated and is essential to the first decision. However, "the first rule for identifying the issues to be precluded is that if there is no showing as to the issues that were *actually* decided, there is no issue preclusion." C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure* § 4420 (1981) (emphasis added). Here, the order denying the petition to compel did not indicate its basis, and may have rested solely on Midwest's contention in its pleadings that this appeal "is the proper forum to resolve all issues between Commonwealth and Midwest on the Port

---

**2.** 9 U.S.C. § 4 provides, in pertinent part, that:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the par-

ties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.... If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

Arthur Subcontract and the action herein should be dismissed." Because we cannot tell whether the court actually reached and decided the merits of the arbitration issue, Commonwealth's claim that there was a valid arbitration agreement between the parties is not barred by issue preclusion.

## IV

Finally, before reaching the merits of the arbitration issue ourselves, we pause to address Midwest's contention that the motion to stay litigation was void because Commonwealth was not a corporation in good standing under Texas law at the time of filing. The record reflects that by the time of the hearing on the motion Commonwealth had paid its outstanding taxes, and that its corporate charter had been reinstated.

Under Texas law, a corporation that has forfeited its corporate privileges is denied the right to sue in a state court. Tex. Tax Code Ann. § 171.252. A delinquent corporation may revive its privileges and access to the courts by obtaining reinstatement of its corporate charter through payment of the delinquent franchise taxes. Tex. Tax Code Ann. §§ 171.313, 171.314, and 171.-253. *See also Speier Tire Co., Inc. v. Tom Benson Chevway Rental and Leasing, Inc.,* 643 S.W.2d 772 (Tex.Civ.App.—San Antonio 1982, writ ref'd n.r.e.). Whether the revival of Commonwealth's corporate privileges retroactively validated its motion for a stay of arbitration is not clearly answered by Texas law, and other jurisdictions have reached differing conclusions under similar statutes regarding the retroactive effect of a corporate charter's revival upon corporate acts taken during revoca-

tion. *See PLM v. The E. Randle Co.,* 797 F.2d 204 (1986); *see generally* Annot., 13 A.L.R.2d 1220 (1950).

■ We need not decide the question in this case, since section 171.252 has been construed narrowly by the Texas courts as not prohibiting the assertion of purely negative defenses or the grant of purely defensive relief. *Rimco Enterprises v. Texas Elec. Serv. Co.,* 599 S.W.2d 362, 364 (Tex. Civ.App.—Fort Worth 1980, writ ref'd n.r. e.); *Bryan v. Cleveland Sand & Gravel Co.,* 139 S.W.2d 612, 613 (Tex.Civ.App.— Beaumont 1940, writ ref'd); *Maloney Mercantile Co. v. Johnson County Savings Bank,* 121 S.W. 889, 890 (Tex.Civ.App.1909, no writ). In determining that a motion for a stay is most fairly characterized as a request for defensive rather than affirmative relief, we note the well recognized distinction between a stay under section 3 and a petition to compel arbitration under section 4 of the Arbitration Act, summarized as follows by Judge Frank:

> The first merely arrests further action by the court itself in the suit until something outside the suit has occurred; but the court does not order that it shall be done. The second, through the exercise of discretionary equity powers, affirmatively orders that someone do (or refrain from doing) some act outside the suit.

*Kukulundis Shipping Co. v. Amtorg Trading Corp.,* 126 F.2d 978, 987 (2d Cir. 1942). Assuming arguendo that Commonwealth was precluded by state statute from obtaining specific performance of any existing arbitration agreement via a section 4 petition,[3] forfeiture of its corporate charter

---

**3.** Whether the forfeiture of corporate privileges under state law can ever preclude a party from seeking relief under the Arbitration Act is certainly debatable. *See Norman M. Morris Corporation v. Weinstein,* 466 F.2d 137, 142 (5th Cir. 1972) (stating that a comparable statute in Florida law "does not limit the jurisdiction of the federal courts in Florida. Only Congress has the prerogative of defining the jurisdiction of the federal courts."); C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure* § 3521 (1984) ("it is unclear whether the states have the power to impose a requirement that a

foreign corporation, as a condition precedent to suit in a federal court, allege and supply the federal court with a certificate from the Secretary of State or taxing authorities showing it had paid all state license fees and taxes due or was licensed to do business there"); *cf. Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (stating that "nothing in the [Arbitration] Act indicat[es] that the broad principle of enforceability [of arbitration provisions] is subject to any additional limitations under State law," and holding that the Act preempted a state law that purported to with-

did not preclude the corporation from asserting through section 3 the defense that the district court should not proceed in the suit because the parties had earlier agreed to arbitrate the issues involved.[4]

### V

At last, we reach the central question in this case: whether the district court erred in denying Commonwealth's motion to stay its proceedings pursuant to section 3 of the Arbitration Act. The answer rests solely on whether the parties agreed in writing to arbitration, as Midwest does not dispute that if there was an arbitration agreement, the breach of contract issues in the suit would fall within its scope.

■ The subcontract between Midwest and Commonwealth provided that:

*All claims, disputes and other matters in question arising out of, or relating to, this Subcontract, or the breach thereof, shall be decided by arbitration,* which shall be conducted in the same manner and under the same procedure as provided in the Contract Documents with respect to disputes between the Owner and Contractor, except that a Decision by the Architect shall not be a condition precedent to arbitration.

(emphasis added). This provision on its face appears to evidence quite plainly the parties' intent to settle by arbitration any disputes arising out of the contract. However, because the subcontract requires that arbitration "be conducted in the same manner and under the same procedure as provided in the Contract Documents with respect to disputes between Owner and Contractor," Midwest points to language in its general contract with the City of Port Arthur that states:

Unless this contract provides otherwise, all claims, counter-claims, disputes and other matters in question between the owner and the contractor arising out of or relating to this agreement or its breach *will be decided by arbitration if the parties mutually agree, or in a court of competent jurisdiction within the State in which the owner is located.*

(emphasis added). Midwest's argument is that because the parties obviously do not "mutually agree" to arbitration, the dispute must be resolved through litigation as provided in the general contract. We disagree.

The agreement to arbitrate in the subcontract is unambiguous. Reference to the general contract is required only to determine which *procedures* will govern the arbitration process; it does not control whether or not disputes will be arbitrated, a question that is not left open by the subcontract. Indeed, the language in the general contract cited by Midwest is completely irrelevant in this case, since it does not "specify the manner and procedure for arbitration" even when the parties *do* mutually agree to arbitrate—but simply states that such disputes "will be decided by arbitration...."

Because the contract between the parties contains an agreement to arbitrate, and the breach of contract claims in Midwest's suit are within the reach of that agreement, the district court incorrectly denied Commonwealth's motion for a stay of litigation under section 3 of the Arbitration Act. The denial of the motion is REVERSED and the case is REMANDED for entry of the stay.

■

---

draw the power to enforce arbitration agreements).

**4.** We observe that even if we were to hold void Commonwealth's original motion to stay litigation, nothing would preclude the corporation from simply filing another motion under either section 3 or section 4. Following its denial the issue of arbitrability would presumably be promptly presented once again to this court, resulting in the wasteful duplication of judicial effort, and as far as we can tell, serving no end relevant to the state statutes in question.