**BRIGGS & STRATTON CORPORATION,
Plaintiff–Appellee,**

**v.**

**LOCAL 232, INTERNATIONAL UNION,
ALLIED INDUSTRIAL WORKERS OF
AMERICA (AFL–CIO), et al., Defen-
dants–Appellants.**

Nos. 93–3868 & 94–1484.

United States Court of Appeals,
Seventh Circuit.

Argued April 13, 1994.

Decided Oct. 3, 1994.

Order Denying Rehearing and Suggestion
of Rehearing En Banc Dec. 28, 1994.

Kevin J. Kinney, Thomas P. Krukowski (argued), John D. Finerty, Jr., Krukowski & Costello, Milwaukee, WI, for plaintiff-appellee.

Kenneth R. Loebel (argued), Frederick Perillo, Scott D. Soldon, Previant, Goldberg, Uelmen, Gratz, Miller & Bruegeman, Milwaukee, WI, for defendants-appellants.

Before CUMMINGS, EASTERBROOK, and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

Briggs & Stratton Corporation has a collective bargaining agreement with Local 232 of the Paperworkers Union. The workers promised that during its term they would not participate in "any concerted slow down, strike, work stoppage or other concerted interruptions of Company operations relative to any dispute amenable to the arbitration provisions of the labor agreement". In August 1993 Briggs & Stratton reorganized its Large Engine Division. Local 232 and its parent international (collectively, "the union") believed that the changes, which altered the way in which seniority could be exercised, violated the terms of the collective bargaining agreement and called on its members to "work to rule"—that is, to enforce every picayune rule found in the contract and the plant's operating procedures. It aimed to place economic pressure on the employer. Local 232 urged its members to reject overtime assignments, and the faithful shunned and put other social pressure on workers who displayed a lack of enthusiasm for the job action. The union also filed a grievance and took the dispute about the new organization to arbitration.

Contending that the campaign was a "concerted slow down" forbidden by the agreement, the employer filed this suit under § 301 of the Labor–Management Relations Act, 29 U.S.C. § 185, seeking an injunction requiring its workers to resume work as usual. Although § 1 of the Norris–LaGuardia Act, 29 U.S.C. § 101, forbids injunctions in labor disputes, the Supreme Court held in *Boys Markets v. Retail Clerks Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), that if the union promises not to strike over an arbitrable dispute, the court may enforce that promise with an injunction while arbitration proceeds. See also *Buffalo Forge Co. v. United Steelworkers,* 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976) (if the dispute is not arbitrable, no injunction may issue even if the agreement contains a no-strike clause). The "work to rule" campaign ended on September 23, two weeks before the suit got under way. By the time the district court took evidence, things were humming again at the plant. The court brushed aside a suggestion that this made the request for an injunction moot (voluntary cessation generally does not moot a dispute) and did not discuss the question whether *Boys Markets* authorizes an injunction after a strike or slowdown has ended. After finding that the union's campaign was a "concerted slow down" within the meaning of the agreement, the court issued an injunction pending the outcome of the arbitration. The union appealed.

■ Arbitrator Robert J. Mueller issued his decision on March 29, 1994, shortly before the oral argument of the appeal. He dismissed the union's grievance after concluding that Briggs & Stratton had not violated the collective bargaining agreement in reorganizing the Large Engine Division. The injunction lapsed the same day. "When an order expires by its own terms, there is nothing to review." *Certified Grocers of Illinois, Inc. v. Produce Union,* 816 F.2d 329, 331 (7th Cir.1987). The dispute cannot be characterized as one capable of repetition but evading review, because damages remain in issue—the union wants to collect under an injunction bond (although it is hard to see what its injury might be, given its representation that the campaign was over before the suit began). See *Henco, Inc. v. Brown,* 904 F.2d 11, 13–14 (7th Cir.1990). The appeal from the injunction is dismissed as moot.

■ Briggs & Stratton, too, wants damages. It contends that it lost production before the campaign ended on September 23. The union asked the district court to dismiss the claim under Fed.R.Civ.P. 12(b)(6) for failure to arbitrate or, at a minimum, to order

the employer to present its demand to an arbitrator and to stay proceedings in the interim. The district court denied both requests on February 15, 1994, ruling that the collective bargaining agreement "is not susceptible to a construction that the company is bound to arbitrate its claim for damages against the union for breach of the no-strike clause." From this decision the union took a second appeal, whose interlocutory nature presents an obvious question of appellate jurisdiction. To the extent the union wants us to review the district court's failure to dismiss the case outright, it hasn't a leg to stand on. *Goetz v. Cappelen,* 946 F.2d 511, 514 (7th Cir.1991). To the extent the union seeks review of the district court's failure to stay proceedings in favor of arbitration, things are murkier.

■ After *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988), junked the *Enelow–Ettelson* doctrine, the courts of appeals divided on the question whether a decision refusing to stay litigation in favor of arbitration could be appealed under 28 U.S.C. § 1292(a)(1). Several circuits answered yes on the theory that proceeding with the litigation amounted to an injunction against arbitration. E.g., *Kansas Gas & Electric Co. v. Westinghouse Electric Corp.,* 861 F.2d 420, 422 (4th Cir.1988); *Nordin v. Nutri/System, Inc.,* 897 F.2d 339, 341–42 (8th Cir.1990). See also *Abernathy v. Southern California Edison Co.,* 885 F.2d 525, 527–28 (9th Cir. 1989) (taking jurisdiction of an appeal from a stay pending arbitration while reserving question whether the denial of a stay would be appealable). Others saw no injunction in proceeding with a suit seeking monetary relief. *Queipo v. Prudential Bache Securities, Inc.,* 867 F.2d 721, 722 (1st Cir.1989); *Zosky v. Boyer,* 856 F.2d 554, 560–61 (3d Cir.1988); *Jolley v. Paine Webber Jackson & Curtis, Inc.,* 864 F.2d 402, 403 (5th Cir.1989); *Administrative Management Services, Ltd. v. Royal American Managers, Inc.,* 854 F.2d 1272, 1278–79 (11th Cir.1988). Searching for an injunction in orders controlling the progress of damages litigation has an artificial quality. Every decision to proceed or wait

imposes costs, but none resolves the merits. If potential costs of procedural decisions make for appellate jurisdiction, then many interlocutory orders are appealable—a step the Supreme Court has told us to resist. See *Digital Equipment Corp. v. Desktop Direct, Inc.,* —— U.S. ——, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994). Cf. *In re Springfield,* 818 F.2d 565 (7th Cir.1987) (order that imposes costs but does not affect ultimate disposition of the merits is not appealable as an "injunction"). It is, after all, established that the costs of litigation are not "irreparable injury." *Van Cauwenberghe v. Biard,* 486 U.S. 517, 529, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988); *FTC v. Standard Oil Co.,* 449 U.S. 232, 244, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980); *Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 1040–41, 39 L.Ed.2d 123 (1974); *Petroleum Exploration, Inc. v. Public Service Commission,* 304 U.S. 209, 222, 58 S.Ct. 834, 841, 82 L.Ed. 1294 (1938). If a district court errs in conducting a lawsuit when a contract calls for arbitration, that mistake may be corrected on appeal from a final decision; proceeding with the litigation therefore is not appealable as a "collateral order" under the approach of *Digital Equipment* and its predecessors.

Congress eliminated the significance of this issue for most purposes by adding a new section to the Arbitration Act, spelling out which interlocutory orders concerning arbitration are appealable and which are not. 9 U.S.C. § 16. Yet § 1 of the Arbitration Act, 9 U.S.C. § 1, excludes from its coverage— and therefore from the jurisdictional rules of § 16—"contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." Several of the circuits have concluded that this language places collective bargaining agreements outside the Arbitration Act. E.g., *Street, Electric Ry. & Motor Coach Employees v. Pennsylvania Greyhound Lines, Inc.,* 192 F.2d 310 (3d Cir. 1951); *Electrical Workers v. Miller Metal Products, Inc.,* 215 F.2d 221 (4th Cir.1954). In *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25 n. 2, 111 S.Ct. 1647, 1651 n. 2, 114 L.Ed.2d 26 (1991), the Supreme Court noticed the issue but left it unresolved. If collective bargaining agreements are indeed excluded by § 1, then courts must continue to wrestle in labor cases with questions of

appellate jurisdiction under § 1292. E.g., *Tejidos de Coamo, Inc. v. ILGWU*, 22 F.3d 8 (1st Cir.1994). As it happens, however, our circuit is among the minority that has limited § 1 to the transportation industries and therefore applies the Arbitration Act to most collective bargaining agreements. *Pietro Scalzitti Co. v. Operating Engineers*, 351 F.2d 576, 579–80 (7th Cir.1965). Neither side has asked us to revisit *Pietro Scalzitti*, so we turn to § 16 of the Arbitration Act to decide whether we have appellate jurisdiction.

Section 16(a) provides:

An appeal may be taken from—

   (1) an order—

      (A) refusing a stay of any action under section 3 of this title,

      (B) denying a petition under section 4 of this title to order arbitration to proceed,

      (C) denying an application under section 206 of this title to compel arbitration,

      (D) confirming or denying confirmation of an award or partial award, or

      (E) modifying, correcting, or vacating an award;

   (2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or

   (3) a final decision with respect to an arbitration that is subject to this title.

Section 16(a)(1)(A) and (B) provides the only potential grants of jurisdiction. These two subsections send us to sections 3 and 4 of the Arbitration Act. Section 3 provides that if a dispute is "referable to arbitration under an agreement in writing" the court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." Section 4 says that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement."

Sections 3 and 4 pose paradigmatic cases. When the parties have commenced an arbitration, the court stays the litigation under § 3 to prevent duplicative proceedings (unless the party requesting the stay is "in default"). When one of the litigants has refused to arbitrate, § 4 tells the court to order that party to abide by its agreement. Our case fits neither pattern. Neither side had made a formal demand for arbitration, and at oral argument counsel for both sides treated arbitration as a poor cousin.

What the union *is* requesting is not so much arbitration as the dismissal of the suit. It does not believe that the Employer is *required* to arbitrate any dispute. Arbitration under this agreement is optional: "Should there be no settlement of a grievance or grievances between the Union and the Company after the outlined steps of the Contract grievance procedure have been exhausted, either party may submit such grievance or grievances to arbitration within sixty (60) days after the grievance has first been discussed at the third step of the grievance procedure." The union believes that an arbitrator's decision on the question whether "work to rule" is a forbidden "concerted slow down" is a precondition to obtaining damages. This is an exhaustion theory: no award, no damages. That is why the union has not itself requested arbitration. As it sees things, an award in its favor by the arbitrator would leave it no better off (because, in its view, as things stand Briggs & Stratton cannot get damages), while an award in the employer's favor would be a disaster. The employer has not requested arbitration for mirror-image reasons: it thinks that it does not need an award, while if it goes to an arbitrator and loses it will certainly be kicked out of court as well.

■■■ Each party, then, has reasons for preferring the court to the arbitrator. Because each side had elected not to arbitrate, there is no pending arbitral proceeding. There is nothing to wait for, making a stay inappropriate. Because arbitration is contractual, and subject to principles of waiver, a district judge cannot order an arbitration that neither side wants. The dispute does not come within § 4 of the Arbitration Act because no one has demanded arbitration. The union does not want the court to direct

Briggs & Stratton to take part in a pending arbitration; it wants the court to dismiss the suit. It does not come within § 3 because, given the contractual nature of arbitration, a dispute that neither side wants to arbitrate is not "referable to arbitration"—and perhaps because the union, by refusing to submit its own demand, is "in default". This is not at all to say that a dispute is "referable to arbitration" only if a party has made a formal demand; as we discuss below, requests in the course of litigation may suffice. We do not believe, however, that the presence of an arbitration clause in a contract renders any dispute within its scope "referable to arbitration" even if both sides now prefer litigation. Contracts obliging one party to arbitrate if the other so requests do not compel a court to send the parties to that forum even if both now prefer litigation. Arbitration under this contract is elective, and collective bargaining agreements also may be altered by course of performance. *Matuszak v. Torrington Co.*, 927 F.2d 320, 324 (7th Cir.1991). Treating the phrase "referable to arbitration" as directing exclusive attention to the language of the agreement would disable parties from foregoing or waiving arbitration, and nothing in the Arbitration Act is designed to imprison them in their privileges.

■ We appreciate the possibility that the union's request to dismiss or stay suit might be characterized as implying a demand for arbitration (although one that would be irregular and untimely under the collective bargaining agreement). See *Mautz & Oren, Inc. v. Teamsters Local 279*, 882 F.2d 1117, 1126 (7th Cir.1989) (presenting as an affirmative defense an employer's failure to arbitrate preserves arbitral options, without the need to make a formal demand). Compare *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), with *Drake Bakeries, Inc. v. Bakery & Confectionery Workers*, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962). Although moving to dismiss failure to arbitrate may support an inference that the objecting party wants to arbitrate, it does not compel such an inference. We therefore explored the question at oral argument and learned that the union sees arbitration as a fallback: better than losing outright, but worse than winning on its principal theory that, by failing to start the arbitral process itself, the employer surrendered any right to damages. The union's lawyer stated that his client is "prepared to arbitrate" if the employer so desires ("if they want to arbitrate we will arbitrate the dispute") but reiterated that the union's essential view is that whether to arbitrate is for the employer to decide. Neither side affirmatively desires arbitration, which negates the inference that by opposing the employer's suit the union has effectively made its own contractual demand for arbitration.

■ In sum, dismissing the appeal does not frustrate the arbitral process or create any risk of duplication or delay. If the employer is right and arbitration is not required, then the district judge's decision on the merits of the claim for damages will resolve the dispute. If the union is right, and an arbitral award on the "concerted slow down" question is a precondition to damages, then the employer will lose this suit outright. There will be one trial, one appeal, and no arbitration, no matter what happens. (Briggs & Stratton has assuredly forfeited its own right to use arbitration as a backstop.) Section 16 of the Arbitration Act does not authorize an interlocutory appeal when there is no arbitration in prospect. *Hartford Steam Boiler Inspection & Insurance Co. v. Quantum Chemical Corp.*, 968 F.2d 631 (7th Cir.1992). The union put the right caption on its initial motion: it made (and the district court denied) a proper request for dismissal under Rule 12(b)(6), but the denial of such a motion is not appealable.

Appeal No. 93–3868 is dismissed as moot, and appeal No. 94–1484 is dismissed for want of jurisdiction.

CUMMINGS, Circuit Judge, concurring in part and dissenting in part.

Because the district court's injunction regarding the Union's work-to-rule campaign[1] lapsed by its own terms upon entry of the

---

1. The work-to-rule campaign encouraged members of the Union to enforce every aspect of the collective bargaining agreement and the plant's operating procedures. Briggs & Stratton claims that this campaign really constituted a concerted slow-down forbidden by the collective bargaining agreement.

arbitrator's decision to dismiss the Union's grievance concerning the changes in the Large Engine Division, I concur in dismissing the Union's appeal from the injunction as moot. I must dissent, however, from the majority's decision to dismiss the Union's appeal from the denial of its motion for a stay pending arbitration of Briggs & Stratton's damages suit.

The majority's reasoning regarding this issue is puzzling. The majority first implies—without supporting citation—that Section 3 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"),[2] applies only "[w]hen the parties have commenced an arbitration." In this case, of course, the parties have not already commenced arbitration of the Company's entitlement to damages arising out of the work-to-rule campaign, suggesting that—according to the majority's reasoning—the Union is not entitled under Section 3 to move for a stay. However, the majority later correctly recognizes that Section 3 is not limited to circumstances in which arbitral proceedings have already been initiated. "This is not at all to say that a dispute is 'referable to arbitration' only if a party has made a formal demand; ... requests in the course of litigation may suffice." Since here the Union clearly made a "request [for arbitration] in the course of litigation" by moving for a stay of district court proceedings—as precedent from both the Supreme Court and from this Circuit makes clear—the implication of the majority's reasoning is that the Union's motion was properly made under Section 3 of the FAA and that this Court, consequently, has jurisdiction under Section 16 to hear the Union's appeal.

The majority, unaccountably, does not reach this conclusion. Instead it infers, apparently from the fact that the Union coupled its motion for a stay of proceedings with another motion to dismiss on the merits, that what the Union "really" wants "is not so much arbitration as dismissal of the suit." It bolsters this conclusion by characterizing counsel's position at oral argument as "treat[ing] arbitration as a poor cousin." Ac-

cording to the majority, "[t]he Union put the right caption on its initial motion: it made (and the district court denied) a proper request for dismissal under Rule 12(b)(6)," the denial of which is not interlocutorily appealable. From this the majority concludes that the Union never made a proper motion for a stay under Section 3 of the FAA and that this Court, therefore, has no jurisdiction over the appeal.

Such reasoning is untenable. First, the majority is unquestionably correct in its assertion that a formal demand for arbitration is not a prerequisite for making a proper motion under Section 3 of the FAA for a stay of district court proceedings. Second, both Supreme Court precedent and precedent from this Circuit make clear that the Union made an adequate request for arbitration in the course of its motion practice. In particular, coupling a motion to dismiss with a motion for a stay was explicitly recommended by this Court not five years ago for litigants in the Union's position. Finally, any suggestion that the Union's counsel did anything at oral argument to undermine the Union's right to request a stay is completely unsupported.

### I. Background

Before considering the legal principles applicable to this case, it is important to recall the Union's situation. The majority implies that the Union is somehow derelict in establishing its entitlement to a stay, either because it did not make a formal demand for arbitration prior to moving the district court for a stay of proceedings, or because it coupled its motion for a stay with a motion to dismiss, or because it is willing to arbitrate but, according to the majority, it is not eager—or it is not eager enough. I disagree.

The Union has no current complaint against the Company. Its previous complaint—that the Company had improperly instituted changes in the structure of the Large Engine Division—was the subject of both the work-to-rule campaign and of a grievance brought by the Union and settled by an arbitrator. It is the Company that

---

**2.** I assume, with the majority, that the Union was entitled under Seventh Circuit precedent to move for a stay of district court proceedings pursuant to 9 U.S.C. § 3. This assumption on the part of the majority renders *dicta* its lengthy discussion

of appeals under 28 U.S.C. § 1292(a)(1) in the post-*Gulfstream* era, since the FAA contains its own provisions for interlocutory appeals. 9 U.S.C. § 16.

currently has a complaint against the Union, since it is attempting to recover over three million dollars in damages on account of alleged economic losses suffered during the work-to-rule campaign. Under *Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers International,* 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962), if the Company had the right to arbitrate this grievance, then it had the obligation to do so prior to filing suit. See, *e.g., Mautz & Oren, Inc. v. Teamsters Local No. 279,* 882 F.2d 1117, 1126, 1126 n. 15 (7th Cir.1989) (because under the parties' agreement in that case the employer "may initiate grievance proceedings," it was required to exhaust all its arbitral remedies before suing the union).[3]

As the majority appears to recognize, the Company undoubtedly had the right to arbitrate this grievance. But it did not take its grievance concerning damages arising out of the work-to-rule campaign to arbitration; it instead filed suit in the district court. Following the procedures that we ourselves had suggested in *Mautz & Oren,* 882 F.2d at 1126, the Union both raised failure to exhaust arbitral remedies as an affirmative defense, R. 7 (Answer) at 9, and moved the district court to stay its proceedings so as to afford the Company an opportunity to arbitrate this dispute if it so desired. R. 8 at 1. According to the majority, however, the Union has not sufficiently demonstrated its commitment to arbitration.

The majority suggests that although a formal demand for arbitration is not required before a defendant may move the court for a stay of proceedings, the Union's failure to have made such a demand raises the inference that the Union does not "want" to arbitrate. It believes that the Union considers arbitration "a poor cousin." But why should

the Union be any more eager to arbitrate than it is to litigate? The Union had no unresolved complaint prior to the Company's filing suit, and it has no unresolved complaint against the Company now. It is for the aggrieved party to institute proceedings in the proper forum to ensure its own recovery; it is not the business of one who has no complaint and seeks no recovery to institute proceedings anywhere, whether it be in court or before an arbitrator. Counsel for the Union made clear, both in its motion practice and at oral argument, that the Union will cooperate in any proceeding the Company institutes to resolve the Company's complaint, so long as that proceeding is in the proper forum. There is no reason for the Union to express any particular enthusiasm for that forum. It has done enough by affording the Company the opportunity to bring its complaint to the proper authority.

Likewise, the Union was entitled under our precedent—indeed, it had been explicitly advised by this Court—to couple its motion to dismiss with a motion for a stay. *Mautz & Oren,* 882 F.2d at 1126. The majority, however, concludes from the Union's having carefully followed this Court's recommendation that what the Union "really" wants is dismissal of Briggs & Stratton's suit on the merits—for failure to have exhausted arbitral remedies—and not arbitration of the underlying dispute. I see no contradiction in the Union's wanting both. Why should it not prefer outright dismissal and yet be willing to arbitrate the dispute if, after the Union obtains a stay, the Company chooses to invoke its right to arbitration? There is no reason to believe that the Union, by appealing the denial of its motion for a stay, is "really" sneaking in an appeal of the denial of its motion to dismiss. Many courts have held that an appropriate response to failure to exhaust arbitral remedies is a stay of

**3.** The majority stresses the permissive aspect of arbitration under the collective bargaining agreement: "[The Union] does not believe that the Employer is *required* to arbitrate any dispute. Arbitration under this agreement is optional." (Emphasis in original.) The majority is correct that the collective bargaining agreement does not require the aggrieved party to pursue arbitration, since it provides that if the Company and the Union cannot negotiate a resolution of any grievance, "either party *may* submit such grievance or grievances to arbitration...." (Emphasis added-

ed.) But while the Company is not required by the contract to arbitrate its complaint against the Union—it is free at any time to drop its attempt to recover damages from the Union—if it wants to pursue relief in the district court it must first have exercised its right, under the contract, to arbitrate its grievance. Cf. *Mautz & Oren,* 882 F.2d at 1126. In the exhaustion context, if the aggrieved party may take its dispute to arbitration, then it must take its dispute to arbitration prior to filing suit.

district court proceedings, rather than outright dismissal of the complaint. See, e.g., id. at 1127; *American Home Assurance Co. v. Vecco Concrete Construction Co.*, 629 F.2d 961, 963–964 (4th Cir.1980); *International Association of Heat and Frost Insulators v. Leona Lee Corp.*, 434 F.2d 192, 193–94 (5th Cir.1970). The Union—following the very tactic we ourselves suggested in *Mautz & Oren*—legitimately moved the district court for dismissal of the complaint or, in the alternative, for a stay pending arbitration, and now it legitimately appeals that aspect of the district court's denial that is immediately appealable. 9 U.S.C. § 16.

Under these circumstances the Union's claim to arbitration does not deserve the short shrift it has gotten from the majority. The majority chides the Union for not having taken action that it had no legal obligation to take, and that it certainly had no good reason to take.[4] As will be demonstrated below, the Union has done all that it should to entitle it to a stay of district court proceedings: It had no reason, either legally or prudentially, to make a formal demand for arbitration when it had no current grievance; it made an adequate request in the course of litigation for arbitration of the Company's grievance; and its position at oral argument was in no way inconsistent with its right to a stay. The Union made a proper motion pursuant to Section 3 of the FAA and this Court, therefore, has jurisdiction over the appeal pursuant to Section 16.

## II. Demand

Section 16 of the FAA provides for interlocutory appeals from, among other things, "an order ... refusing a stay of any action under section 3 of this title...." 9 U.S.C. § 16(a)(1)(A). Section 3 of the FAA provides that "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had" unless the applicant for the stay is "in default in proceeding with such arbitration." 9 U.S.C. § 3.

The majority initially suggests, without supporting citation, that Section 3 applies only when the parties to the lawsuit have already commenced arbitration. This interpretation would significantly narrow the scope of the section. Instead of applying to all issues *"referable* to arbitration under an agreement in writing," under this reading the section would apply only to issues previously *referred* to arbitration. Apparently relying on this interpretation of Section 3, the majority emphasizes that in this case neither party made a formal demand for arbitration, concluding that "because each side has elected not to arbitrate, there is no pending arbitral proceeding. There is nothing to wait for, making a stay inappropriate."

As the majority later appears to recognize, however, such an interpretation of the plain language of the statute is unsupported by caselaw. The cases interpreting the "referable to arbitration" language of Section 3 uniformly agree that "where a court is satisfied that a dispute before it is arbitrable, it must stay proceedings and order the parties to proceed to arbitration." *Progressive Casualty Insurance Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 45 (2d Cir.1993). The sole factors in determining whether a dispute is arbitrable are "whether there is a written agreement to arbitrate; then, whether any of the issues raised are within the reach of that agreement." *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir.1993) (citation and internal quotation marks omitted). Accord, e.g., *C.A. Reaseguradora Nacional*, 991 F.2d at 45; *Pearce v. E.F. Hutton Group, Inc.*, 828 F.2d 826, 830 (D.C.Cir.1987). These

---

4. The majority cites *Hartford Steam Boiler Inspection and Insurance Co. v. Quantum Chemical Corp.*, 968 F.2d 631 (7th Cir.1992), in support of the proposition that "Section 16 of the Arbitration Act does not authorize an interlocutory appeal when there is no arbitration in prospect." On the contrary, in *Hartford Steam Boiler* the appellant—"neither a party to any arbitration nor fettered by its outcome," which had "no contractual right to arbitrate anything with any-

one"—had moved the district court to direct arbitration between the appellee and third parties that were strangers to the litigation. 968 F.2d at 633–34. We noted that "[a]lthough an order denying such a request is appealable under § 16, such a request is foredoomed." *Id.* at 634. Clearly there was "no arbitration in prospect" in *Hartford Steam Boiler,* and yet this Court explicitly acknowledged its jurisdiction over the appeal.

cases make no suggestion that Section 3 applies only when an arbitration proceeding has already been instituted. Indeed, the Fifth Circuit, in *Midwest Mechanical Contractors, Inc. v. Commonwealth Construction Co.*, explicitly addressed and rejected the argument, which the majority clearly finds quite appealing, that Section 3 of the FAA applies only when the parties have commenced an arbitration. 801 F.2d 748, 750 (5th Cir.1986); see also *Tenneco Resins, Inc. v. Davy International, AG*, 770 F.2d 416, 419 (5th Cir. 1985); cf. *Fujikawa v. Gushiken*, 823 F.2d 1341, 1347 (9th Cir.1987), certiorari denied, 487 U.S. 1240, 108 S.Ct. 2913, 101 L.Ed.2d 945 (1988).

While several courts have rejected the notion that an issue is "referable to arbitration" under Section 3 of the FAA only if the parties have commenced arbitration, the cases more commonly address the failure to have invoked arbitration in terms of "default" under Section 3. These cases hold that failure to have invoked arbitration under the contract is not by itself "default" so as to warrant denying a stay. See, *e.g.*, *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 983 (4th Cir.1985); *Vecco Concrete*, 629 F.2d at 963; *Carolina Throwing Co. v. S & E Novelty Corp.*, 442 F.2d 329, 330 (4th Cir. 1971); cf. *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1160–61 (5th Cir.1986) (implied holding); *Mogge v. Dist. No. 8, International Association of Machinists*, 387 F.2d 880, 883 (7th Cir.1968) (same), certiorari denied, 391 U.S. 936, 88 S.Ct. 1849, 20 L.Ed.2d 855. Such cases note that the issue of "procedural default"—that is, whether the parties have satisfied the contractual requisites for arbitration under their contract—is an issue for the arbitrator, not the court, to determine. See generally *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 555–58, 84 S.Ct. 909, 917–19, 11 L.Ed.2d 898; see also *Washington Hospital Center v. Service Employees International Union*, 746 F.2d 1503, 1506–08 (D.C.Cir.1984) (collecting cases). The majority is therefore wrong to suggest that the Union "by refusing to submit its own demand [for arbitration], is 'in default.'"

There is simply no support for the majority's initial position that only when there has been a formal demand for arbitration may a party move the district court for a stay of proceedings under Section 3 of the FAA. It recognizes this by later noting that Section 3 applies not only when a party has previously made a formal demand for arbitration but also when a party makes such a request in the course of litigation. Applicable precedent demonstrates that in this case the Union did make such a request.

### III. Motion Practice

Both the Supreme Court and this Circuit have considered and addressed what constitutes a request for arbitration made in the course of litigation. In *Drake Bakeries*, just as in the case at bar, the employer sued its union to recover damages arising out of an alleged breach of a no-strike clause contained in a collective bargaining agreement. The union thereupon moved the district court for a stay of proceedings pending arbitration pursuant to the collective bargaining agreement between the parties. 370 U.S. at 255–56, 82 S.Ct. at 1347–48. The Court explicitly rejected the employer's contention that the union was not entitled to a stay "because it [had] not proceeded with dispatch in seeking arbitration." *Id.* at 266, 82 S.Ct. at 1353. The Court held that "the first occasion for the union to insist upon its right to arbitrate the employer's claim for damages" was after the employer filed its suit in the district court. *Id.* at 267, 82 S.Ct. at 1354. "This it promptly did by moving for a stay in the District Court." *Id.*

In the case at bar, as in *Drake Bakeries*, the first occasion for the Union to insist upon its right to arbitrate the Company's claim for damages was after the Company made clear, by filing suit, that it had such a claim. In the case at bar, as in *Drake Bakeries*, the Union signalled its desire to arbitrate by promptly moving the district court for a stay. In *Drake Bakeries*, making such a motion was considered a sufficient indication of the union's desire to arbitrate. In the case at bar, however, the majority finds the union's motion for a stay to be insufficient evidence of its desire to arbitrate.

The majority believes that the Union in this case "really" wants the case dismissed, rather than stayed pending arbitration. It draws this conclusion from the Union's having combined its motion for a stay with a

motion to dismiss. This inference is effectively foreclosed by our recent holding in *Mautz & Oren,* 882 F.2d at 1126, 1127. In that case the defendant union, faced with a damages suit premised on breach of a no-strike clause contained in a collective bargaining agreement, raised failure to arbitrate as an affirmative defense in its answer. It did not, however, move the district court for a stay pending arbitration. Nonetheless, this Court held that on remand the employer's contract claim should be stayed pending exhaustion of available grievance procedures. *Id.* at 1127. It noted, however, that the better practice would have been for the defendant both to raise failure to exhaust as an affirmative defense and to move the district court for a stay. *Id.* at 1126.

In the case at bar, as in *Mautz & Oren,* the Union raised failure to exhaust arbitral remedies as an affirmative defense in its answer; it also moved the district court to dismiss on that ground. Moreover, it additionally moved the district court for a stay pending arbitration. In *Mautz & Oren* such a procedure was explicitly approved. In the case at bar, however, the majority considers the Union's actions to have been fatally equivocal, inferring that the Union is now improperly appealing the denial of its motion to dismiss and not the denial of its motion for a stay.

The majority provides no principled reason for departing from Supreme Court and Circuit precedent on the issue of what constitutes a proper request for arbitration made in the course of litigation. The clear implication of the Union's motion practice is that it adequately made such a request. The majority, however, avoids this result by asserting that counsel's performance at oral argument somehow demonstrates the Union's disinterest in arbitration. To the contrary, counsel's oral argument was in every way consistent with the Union's previous litigation posture.

### IV. Oral Argument

Perhaps recognizing that the cases (1) do not require that an arbitral proceeding be pending before a stay of district court proceedings will be appropriate, (2) do not treat the failure of the moving party to have invoked arbitration under the contract as *per*

*se* constituting "default" under Section 3, and (3) are willing to treat a motion for a stay made in the district court as an adequate indication of a desire to arbitrate, the majority falls back on the assertion that in *this* case the parties themselves are not interested in arbitrating.

In response to this assertion it suffices merely to set out the precise exchange that took place at oral argument between the Court and the attorney for the Union. It should be noted that at no time prior to oral argument had anyone even suggested that the Union's failure to have demanded arbitration either legally precluded it from moving for a stay or allowed an inference that it did not desire arbitration.

> COURT: Has there been a separate arbitration request for damages made? * * * Well, then what is this a stay in favor of? * * * But no one has, neither the union nor the employer, has asked for any arbitration?

In this context the attorney for the Union responded, apparently considering the holding of *Drake Bakeries,* 370 U.S. at 267, 82 S.Ct. at 1354 ("promptly ... moving for a stay in the district court" can replace a contractual demand for arbitration), and of *Mautz & Oren,* 882 F.2d at 1126 (raising failure to have exhausted arbitral remedies as an affirmative defense, even in the absence of a motion for a stay, can replace a contractual demand for arbitration):

> COUNSEL: The union has. The union said to the court we would want to arbitrate that ...
>
> COURT: You don't ask for arbitration by asking it of the court. Have you made a proper demand for arbitration?
>
> COUNSEL: Only indirectly through this stay in saying we are prepared to arbitrate that dispute in an arbitral forum.

A long dialogue ensued regarding what contractual procedures are required in order to invoke arbitration, and whether the Union had an obligation to initiate arbitration after the Company—wrongfully, in the Union's view—had filed suit in district court. The Union relied on *Drake Bakeries* and on *Mautz & Oren* to support its position that because it had no current complaint against the Company, it had no reason to invoke any

grievance procedures. The Union's counsel was emphatic, however, that if the Company decided to pursue its arbitral remedies, the Union would co-operate:

> COUNSEL: * * * [In *Mautz & Oren*] the union let it be known, as we did to the district court, that we are prepared to arbitrate, and that is in the record. *That is in the record that the union was prepared to arbitrate this dispute.*[5] And we simply asked the employer to exhaust its remedies under the contract, and *if they want to arbitrate we will arbitrate the dispute.* (Emphasis added.)

Although the majority admits that under *Mautz & Oren* "moving to dismiss [for] failure to arbitrate may support an inference that the objecting party wants to arbitrate," it finds that counsel's oral argument somehow negates that inference. I disagree. The quoted exchange is simply insufficient to negate the inference, otherwise mandated by *Drake Bakeries* and *Mautz & Oren,* that the Union by its motion practice made a sufficient request for arbitration. It is clear that the Union will arbitrate any dispute that the Company cares to bring before an arbitrator. The Union correctly believes, however, that because it has no complaint against the Company, it has no obligation to initiate arbitration itself.

Indeed, in my view this exchange does not even demonstrate that the Union considers arbitration to be, in the words of the majority, "a poor cousin." But suppose it did. What legal effect could this have? Considering arbitration to be a poor cousin is a far cry from waiving one's right to request it. Oral argument is intended to clarify murky issues of fact or law, not to trap the litigants into making assertions that supposedly undermine their entitlement to the very relief they have been—to all previous appearances—vigorously seeking.

## V. Entitlement to a Stay

Because in my view we have jurisdiction to hear this appeal, I must briefly indicate that the Union is entitled to a stay under Section 3 of the FAA. Where a collective bargaining agreement contains an arbitration clause, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)). The collective bargaining agreement at issue here provides that "With the exception of grievances concerning the incentive system outlined in this Contract, *all* grievances between the two parties shall be deemed arbitrable." Article IV, Section 2 (emphasis added). The presumption of arbitrability afforded to any particular grievance that arises under a collective bargaining agreement containing an arbitration clause is "particularly applicable where the clause is ... broad," *AT & T Technologies,* 475 U.S. at 650, 106 S.Ct. at 1419, and we have already construed a similar agreement between the parties now before us as containing such a broad arbitration clause. *Local 232, Allied Industrial Workers of America v. Briggs & Stratton Corp.,* 837 F.2d 782, 785 (7th Cir.1988). "In such cases, in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Technologies,* 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Warrior & Gulf,* 363 U.S. at 584–85, 80 S.Ct. at 1354). The arbitration clause in the case at bar broadly covers "all grievances between the two parties," with one explicit exception not applicable here. Briggs &

---

5. Counsel's assessment of the record is correct. In addition to its motion practice, discussed above, the Union explicitly informed the district court that it would arbitrate the damages issue if the Company so desired. See, *e.g.,* R. 25 (Tr.Vol. 1) at 6 (Mr. Loebel, counsel for the Union: "[T]he union's position is ... that the company should be pursuing its contractual remedies. We will arbitrate that dispute with the company if it seeks to...."); *id.* at 20–21 ("The company is essentially suing now for a breach of contract.... And we're willing to arbitrate that issue.").

Stratton does not suggest any express provision that would exclude its damages claim from arbitration, nor does it advance a persuasive argument that there is any forceful evidence of a purpose to exclude its claim from arbitration, as required by *AT & T Technologies.*

Therefore, because this grievance is "referable to arbitration" under Section 3 of the FAA and the Union is not in default in proceeding with the arbitration, a stay of district court proceedings is mandated.

### VI. Conclusion

I respectfully dissent from the dismissal of appeal number 94–1484 for want of jurisdiction. This Court should hear the appeal. The decision of the district court should be reversed and the case remanded with instructions to stay proceeding pending arbitration.

Before CUMMINGS, EASTERBROOK, and MANION, Circuit Judges.

### ON PETITION FOR REHEARING AND SUGGESTION OF REHEARING EN BANC

#### Dec. 28, 1994

Defendants–Appellants filed a petition for rehearing and suggestion of rehearing en banc on October 14, 1994. A judge in regular active service requested a vote on the suggestion of rehearing en banc, which failed to obtain a majority,* and all of the judges on the panel have voted to deny rehearing. The petition for rehearing is therefore DENIED.

RIPPLE, Circuit Judge, dissenting from the denial of rehearing en banc.

The panel majority "[d]amn[s] with faint praise"[1] this court's decision in *Mautz &*

*Oren v. Teamsters Local No. 279,* 882 F.2d 1117 (7th Cir.1989). Although it cites this case as the law of the circuit, it does not follow its holding. *Mautz & Oren* provides specifically that a Union defendant need only move "for an order to compel arbitration, or [seek] a stay of the litigation pending arbitration, in order to properly advise the court of its position that the litigation should not proceed without prior resort to the contractual grievance machinery." *Id.* at 1126. This case provides objective criteria for ascertaining whether a party has invoked an arbitration clause. Today, by allowing the panel opinion to stand, the court interjects needless ambiguity into the law of the circuit in an area in which the bench and bar have a right to expect a reasonable degree of predictability and certainty.

The gravity of this situation is compounded by the panel majority's methodology. In a clear departure from the established division of responsibility between trial and appellate courts, it relies largely upon concessions exacted from the defendant on appeal, especially at oral argument, as a substitute for the objective criteria set forth in *Mautz & Oren.*

Because I believe that respect for the doctrines of stare decisis and precedent require that we adhere to our decision in *Mautz & Oren,* I respectfully dissent from the denial of rehearing en banc.

---

* Cummings, Ripple and Rovner, Circuit Judges, voted to grant rehearing en banc.

1. Alexander Pope, An Essay on Man, Epistle IV.